## NATIONAL TREASURY EMPLOYEES UNION et al., Plaintiffs,

v.

## UNITED STATES DEPARTMENT OF the TREASURY, Internal Revenue Service, Defendant.

### Civ. A. No. 79–1417.

United States District Court, District of Columbia.

April 24, 1980.

Robert M. Tobias, William E. Persina, George E. Lacy, Washington, D. C., for plaintiffs.

John J. McCarthy, Gregory S. Hrebiniak, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant; Charles F. C. Ruff, U. S. Atty., Washington, D. C., of counsel.

## MEMORANDUM OPINION OF UNITED STATES DISTRICT JUDGE

CHARLES R. RICHEY, District Judge.

This case is before the Court on the parties' cross-motions for summary judgment. Plaintiffs, the National Treasury Employees Union ("NTEU"), and Mr. Frank Ferris, an NTEU employee, bring this suit under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"); they seek to examine portions of the Multi-District Collective Bargaining Contract Administration Handbook ("Handbook"). Plaintiffs submit that these documents should be produced pursuant to either 5 U.S.C. § 552(a)(2)(C) or 5 U.S.C. § 552(a)(3). Defendant, the United States Department of the Treasury, Internal Revenue Service ("IRS"), contends that the documents at issue are exempt from disclosure by virtue of 5 U.S.C. §§ 552(b)(2), (3) & (5). Because material facts are not in dispute, the Court finds that summary judgment is

appropriate. It finds further after examining the documents *in camera*, that the withheld portions of the Handbook are protected from disclosure under 5 U.S.C. § 552(b)(2) ("exemption 2"), and that defendant's motion for summary judgment must be granted.

## I. BACKGROUND

Plaintiff NTEU is the exclusive bargaining representative of all bargaining unit employees of the IRS and in this capacity, NTEU is authorized to negotiate and administer collective bargaining agreements on behalf of such employees. By letter dated June 7, 1978, plaintiffs, pursuant to the FOIA, 5 U.S.C. § 552, requested the IRS to disclose the Multi-District Collective Bargaining Contract Administration Materials ("Handbook"). This document consists of materials relating to the Multi-District Contract ("contract"), a labor agreement negotiated between NTEU and the IRS establishing working conditions for IRS employees. The Handbook, which defendant describes as a mere draft, is organized according to the articles of the Multi-District Contract. For each article, the Handbook has five distinct subdivisions: 1) the contract language; 2) agency regulations applicable to the contract; 3) official decisions by arbitrators, agencies or courts which pertain to the particular article; 4) the bargaining history surrounding the article; and 5) the IRS's interpretation of the article.

The IRS responded to NTEU's FOIA request by disclosing the first three parts of the Handbook, but it declined to produce parts 4 and 5, the bargaining history and management's interpretation of the contract. Plaintiffs' suit concerns these two portions of the Handbook. Part 4, the bargaining history, relates in a factual fashion, the evolution of each article. It describes similar provisions in earlier collective bargaining agreements, explains the proposals and counterproposals offered during the negotiation process, and details the arguments which the negotiators urged on behalf of the various proposals. Part 5 of the Handbook contains interpretations of each article in the contract. These interpretations serve as instructions for IRS executives whose responsibilities involve interaction with the NTEU.

## II. THE HANDBOOK NEED NOT BE DISCLOSED UNDER 5 U.S.C. § 552(a)(2)(C).

■ The FOIA provides for disclosure of agency documents in a variety of ways. Apart from the catch-all command of 5 U.S.C. § 552(a)(3), subsections (a)(1) and (a)(2) may require publication, indexing, or general availability to the public. Before examining the disclosure exemptions of 5 U.S.C. § 552(b), the Court must determine whether the entire Handbook, not just the withheld portions, falls within the scope of one of the FOIA's special disclosure provisions. Specifically, the Court must address plaintiffs' claim that the document at issue must be made public pursuant to 5 U.S.C. § 552(a)(2)(C),[1] which provides:

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

\*   \*   \*   \*   \*   \*

(C) administrative staff manuals and instructions to staff that affect a member of the public.

Plaintiffs submit, somewhat sophistically, that, as federal employees, they are members of the "public" who are affected by the Handbook; thus, they conclude that it should be published. Such a reading of the statute, however, strips all sense from the phrase "members of the public." Under plaintiffs' approach, who would not be a member of the public? If Congress intended 5 U.S.C. § 552(a)(2)(C) to benefit everyone, why wouldn't the statute merely compel publication of "all administrative staff manuals"?

1. For a good discussion of recent cases under this state, see Note, Administrative Law, 1979 Ann.Survey Am.L. 361, 362–67.

The Court is unpersuaded that plaintiffs' construction was intended by Congress. Rather, the Court believes that Congress used this critical phrase to distinguish the public at large from those who work for the federal government. Under the statute, it is the government manual which must affect the public—not regulate its internal operations—in order for public inspection to be compelled. An administrative staff manual which affects the public, within the meaning of 5 U.S.C. § 552(a)(2)(C), must detail the enforcement of public laws or agency regulations, not the enforcement of a collective bargaining agreement between the government and its employees.

Further, judicial construction of 5 U.S.C. § 552(a)(2)(C) has been limited to staff manuals which fit the above description. *Jordan v. United States Department of Justice*, 591 F.2d 753 (D.C. Cir. 1978) (en banc); *Cox v. United States Department of Justice*, 576 F.2d 1302 (8th Cir. 1978); *Stokes v. Brennan*, 476 F.2d 699 (5th Cir. 1976); *Hawkes v. IRS*, 467 F.2d 787 (6th Cir. 1972). In *Cox v. United States Department of Justice*, 576 F.2d 1302, 1309 (8th Cir. 1978), the Eighth Circuit ruled that, while "information clarifying substantive or procedural law must be disclosed," "mere 'housekeeping' matters . . . do not 'affect a member of the public' and therefore are not covered by (a)(2)(C)." Further, the distinction between agency personnel and the public at large has been recognized as salient for determining public interest under other portions of the FOIA. *Cox v. United States Department of Justice*, 601 F.2d 1, 4–5 (D.C. Cir. 1979) (exemption 2 protects material of interest to federal personnel, but of no interest to the public). The Handbook, here, provides neither substantive nor procedural guidance for IRS officials in their administration of tax policy. Instead, it establishes the terms and conditions of the employment relationship between IRS executives and employees. Such housekeeping details simply do not affect the public within the meaning of 5 U.S.C. § 552(a)(2)(C) and accordingly, the defendant need not make the Handbook available for public inspection and copying.

Having determined that the Handbook is not subject to disclosure under the terms of 5 U.S.C. § 552(a)(2), the Court must resolve whether the withheld segments are covered by the exemptions which defendant raises.

## III. PARTS 4 AND 5 OF THE HANDBOOK ARE EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552(b)(2).

■ Section 552(b)(2) of title 5, United States Code, ("exemption 2") provides that the following material is exempt from disclosure under the FOIA:

> This section does not apply to matters that are—
>
> *   *   *   *   *   *
>
> (2) related solely to the internal personnel rules and practices of an agency.

Although exemption 2 must be construed narrowly, the Court finds that the segments of the Handbook related to agency interpretations of the contract, part 5, fall within the scope of this exemption. Part 4, concerning bargaining history, is also covered.

In *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the Supreme Court first examined the scope of exemption 2. Reviewing the conflicting legislative history of this exemption, the Court concluded that the narrow interpretation of the statute set forth in the Senate Report accompanying the bill was the appropriate legislative guideline. 425 U.S. at 363–4, 96 S.Ct. at 1600. The Senate Report states:

> Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulations of lunch hours, statements of policy as to sick leave, and the like.

S.Rep.No.813, 89th Cong., 2d Sess. 8 (1965), *quoted at* 425 U.S. at 363, 96 S.Ct. at 1600. The Court explained that this exemption evinced a legislative judgment that agencies should not be burdened with assembling and maintaining for public inspection matter "in which the public could not reasonably be expected to have an interest." 425 U.S. at 369–70, 96 S.Ct. at 1603.

**1324**

More recently, in *Jordan v. United States Department of Justice*, 591 F.2d 753 (D.C. Cir. 1978) (en banc), the court of appeals for this circuit has found that exemption 2 contains three key words: "internal," "personnel," and "solely." 591 F.2d at 763. The word "internal," the court explained, describes "rules and practices that concern relations among the employees of an agency," while "personnel" connotes "matters relating to pay, pensions, vacations, hours of work, lunch hours, parking, etc. . . ." *Id.* Of course, the word "solely" emphasizes the limited scope of the exemption. Evaluating the congressional design, the court declared: "The rules and practice by which an agency orders its *own* affairs among its *own* personnel would seem to invite little public interest in disclosure." *Id.* (emphasis in original). *See also Cox v. United States Department of Justice*, 601 F.2d 1, 4 (D.C. Cir. 1979).

The material contained in part 5 of the Handbook falls squarely within this narrow exemption. The Contract itself deals with the very subjects specified as exempt by the court in *Jordan* : pay (article 13), pensions (article 30), vacations (article 16), and hours of work (article 22). Part 5 of the Handbook contains a full discussion of defendant's views regarding its employee's terms and conditions of employment. This discussion covers the breadth of employment practices, including assignment of work, overtime, travel, disciplinary actions and grievance procedures. Defendant's analysis of its obligations to its *own* employees is certainly material relating *solely* to *internal personnel* obligations. Accordingly, the Court concludes that part 5 is exempt from disclosure under 5 U.S.C. § 552(b)(2).

The application of exemption 2 to part 4 of the Handbook, the history of bargaining between NTEU and the IRS, is more troublesome. To the extent that this history describes the evolution of internal personnel rules, it certainly relates in part to these rules. Exemption 2, however, applies only if the requested matter relates *solely* to internal personnel rules. The Court is persuaded that the bargaining history meets this rigorous test. Although in contrast to

part 5 of the Handbook, the history does not set forth actual personnel rules, it is nonetheless "related" to those rules within the meaning of 5 U.S.C. § 552(b)(2). The history explains the origin of specific personnel practices, identifies the parties who sought them, and describes their evolution through previous collective bargaining agreements. Because part 4 does no more than describe the evolution of personnel rules it must *a fortiori* relate solely to those rules. Indeed, the FOIA would make little sense if genuine personnel rules were exempt, but the history of those rules had to be disclosed. Congress has declared that a personnel rule has too little significance to merit disclosure; the history of such a rule could hardly be of greater moment. Having found no meaningful distinction between personnel rules and their origins, the Court must conclude that part 4 of the Handbook is also exempt under 5 U.S.C. § 552(b)(2).

## IV. CONCLUSION

The Court finds that the Handbook is not an administrative staff manual which affects a member of the public within the meaning of 5 U.S.C. § 552(a)(2)(C). The Court holds further that the withheld portions of the Handbook are exempt from disclosure under 5 U.S.C. § 552(b)(2). Having found exemption 2 controlling, the Court declines to rule on defendant's claims asserted under 5 U.S.C. §§ 552(b)(3) & (5). Thus, defendant's motion for summary judgment shall be granted.

An order in accordance with the foregoing shall be issued of even date herewith.