**ARMY TIMES PUBLISHING COMPANY, Plaintiff,**

v.

**DEPARTMENT OF THE ARMY, Defendant.**

Civ. A. No. 87–2866.

United States District Court, District of Columbia.

May 2, 1988.

Michael S. Horne, Mark H. Lynch, Covington & Burling, Washington, D.C., for plaintiff.

Richard L. Huff, Atty. Advisor, Office of Information and Privacy, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiff, publisher of the weekly *Army Times*, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel production of computerized records held by defendant Department of the Army that contain the names, addresses, grade levels, and installation location of all active duty Army personnel in the United States.[1] The Army denied plaintiff's request on the basis that the records "relate[ ] solely to internal personnel rules and practices of an agency" and therefore can be withheld under exemption 2 of FOIA, 5 U.S.C. § 552(b)(2). The matter now comes before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the motion of plaintiff is granted and the motion of defendant is denied.

### I. Factual Background

The *Army Times* is a weekly newspaper published by plaintiff[2] with a worldwide circulation of approximately 130,000. Declaration of Henry Belber ("Belber Decl."), Plaintiff's Cross–Motion for Summary Judgment, ¶ 3. It carries news, features,

---

1. Plaintiff also originally requested information on Army personnel considered to be in sensitive or routinely deployable units, but in light of defendant's position that disclosure of this information would constitute a "clearly unwarranted invasion of personal privacy," under exemption 6, 5 U.S.C. § 552(b)(6), plaintiff's voluntary dismissal of this part of its complaint was approved by the Court on February 22, 1988.

2. The *Army Times* is published by the Army Times Publishing Company, a division of the Times Journal Company, which also publishes two similar newspapers directed to members of the Navy and the Air Force—the *Navy Times* and the *Air Force Times*. Declaration of Henry Belber ("Belber Decl."), attached to Plaintiff's Cross-Motion for Summary Judgment, ¶ 3–4.

and editorials of particular interest to active duty and retired Army personnel and their dependents. *Id.* Although privately owned and operated, the *Army Times* has been acknowledged as a leading source of career information by Army personnel and is used by government officials both as a source of authoritative information and to disseminate information. *Id.* ¶ 5.[3] The *Army Times* also publishes news on Army personnel policy, legislation, proposed legislation, and judicial decisions affecting the Army. Belber Decl., ¶¶ 5, 8; Declaration of Robert B. Sims ("Sims Decl.") ¶¶ 6, 7. Several stories on the military first reported in the *Army Times* have been subsequently picked up by the wire services and general circulation newspapers. Belber Decl. ¶ 11. Indeed, defendant acknowledges that the *Army Times* is "not only available, but is prominently displayed, in the Post Exchange" on every Army base. Defendant's Reply, at 10 n. 8.

Plaintiff contends that new sales and circulation are essential to the continued publication of the *Army Times* because it continually loses subscribers as readers change interests, relocate, die, or for other reasons. Consequently, the *Army Times* "must pursue on-going efforts to find new subscribers to replace lost ones." Belber Decl. ¶ 12. Further, plaintiff claims that communicating with potential new subscribers is especially difficult for the *Army Times* because the military population is so widely dispersed and mobile; direct solicitation, therefore, is "a critically important means of maintaining viable circulation levels for the Times newspapers and making

them available to interested readers." *Id.* at 13.

According to plaintiff, accurate commercial lists of military personnel are not available. Thus, in both 1985 and 1986, the *Army Times* requested from the defendant, and received, under FOIA, magnetic tapes containing a roster that showed the name, pay grade, and installation of assignment for active duty military personnel stationed in the United States. *Id.* ¶ 14.[4] In those two years, the Army provided the requested tapes at a charge of $1,489.00 for each tape. *Id.*[5]

In May 1987, plaintiff once again requested similar information from the Army. Instead of releasing the information, the Army requested plaintiff to advise it whether any public interest would be served by disclosure of the requested records. Declaration of Jerry L. Brumbaugh ("Brumbaugh Decl.") ¶ 4. Plaintiff replied that its purpose for seeking the requested records was to update its subscription files when subscriber copies are returned as "unknown" or "undeliverable." *Id.* ¶ 5. By letter dated June 19, 1987, the Army denied plaintiff's request on the ground that the list fell within FOIA exemption 2.

The Army's about-face on the issue of release is attributable to a 1985 decision by Judge Flannery of this Court that the government cannot rely on exemption 6 of FOIA to withhold the names and duty addresses of service members. *Hopkins v. Department of the Navy*, No. 84–1868 (D.D.C. Feb. 5, 1985) [available on WESTLAW, 1985 WL 17673]. Jerry L. Brumbaugh, the Freedom of Information/Priva-

---

**3.** Robert B. Sims, a former Assistant Secretary of Defense for Public Affairs, and author of *The Pentagon Reporters,* a book about press coverage of the military, has observed:

Although commercial enterprises, the *Times* papers are vital to internal information flow for the military services. Surveys of active duty military personnel have shown that the papers are a leading source, perhaps *the* leading source, of career information for military professionals.

Declaration of Robert B. Sims, at ¶ 6.

**4.** The Army's computerized personnel files (contained in two computerized data bases maintained by the Personnel Information Systems

Command) contain a broad range of information on members of the service, including name, present grade or rank, current organization and location assignment, date of most recent promotion, branch of service, military occupational specialties, assignment history, education and training, age, number of years of active duty and reserve service, and projected separation or retirement dates. Brumbaugh Decl., ¶ 9. Plaintiff seeks only the first three categories of information.

**5.** Plaintiff received similar information from the Air Force, Marines, and the Navy for its other publications in 1985, 1986, and 1987. Belber Decl. ¶ 16.

cy Act Officer, United States Total Army Personnel Agency, states in a declaration filed by the Army, that, after the *Hopkins* decision, which the government did not appeal, "the number of FOIA requests for personnel list information progressively grew, placing a similarly progressive drain on FOIA personnel resources." Brumbaugh Decl. ¶ 15. Accordingly, in the Spring of 1987, "faced with these increasing administrative burdens," the Army determined that FOIA exemption 2 was "under such circumstances, an appropriate legal basis to deny such requests." *Id.*[6] After plaintiff's appeal of the denial was rejected by the Army's General Counsel, plaintiff filed this action requesting the defendant be ordered to provide plaintiff with the requested records. The essential facts are undisputed[7] and the case is appropriately postured for summary judgment. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. Analysis

■ An agency may properly invoke exemption 2 of FOIA to withhold from public disclosure matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The analytical framework for determining whether this exemption applies was clearly set out by the Court of the Appeals for this Circuit in *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830 n. 4 (D.C.Cir.1983):

First, the material withheld should fall within the terms of the statutory language as a personnel rule or internal practice of the agency.... Then, if the material relates to trivial administrative matters of no genuine public interest, exemption would be automatic under the statute.... If withholding frustrates legitimate public interest, however, the material should be released....[8]

The *Scientology* court further held commented that a "reasonably low threshold should be maintained for determining when withheld administrative material relates to significant public interests." *Id.*

Plaintiff argues that the Army has failed to carry its burden of demonstrating that the requested information falls within exemption 2 and that, even assuming it did meet the statutory language, the list is not a trivial administrative matter of no genuine public interest. The Court agrees.

Agency records may normally be withheld only if the agency sustains its burden of proving they are exempted under clearly delineated statutory language. *Tax Analysts v. United States Department of Justice*, 845 F.2d 1060, 1064 (D.C.Cir.1988). Reading exemption 2 narrowly as this Court must, *Vaughn v. Rosen*, 523 F.2d 1136, 1142 (D.C.Cir.1975), the Court finds that the records requested, contained on two computer data bases, are neither an internal personnel rule or practice nor sole-

---

6. Plaintiff does not dispute that agency information may, under appropriate circumstances, be withheld under more than one exemption under FOIA. *Institute for Policy Studies v. Department of the Air Force*, 676 F.Supp. 3, 5 (D.D.C.1987). Plaintiff's Reply, at 2.

7. Defendant objects to certain of the undisputed issues of material fact presented by plaintiff on the basis that those involving the plaintiff's "journalistic status and history" are not "material" and that others constitute conclusions of law. Defendant's Opposition to Plaintiff's Cross–Motions for Summary Judgment, at 2 n. 3.

One of the disputed, but not material, facts worth briefly noting is defendant's contention that it would take 40 hours of computer programming to create the new computer program necessary to produce the information requested by plaintiff. Brumbaugh Decl., ¶ 12. Plaintiff questions this assertion since in 1985 and 1986 the Army released magnetic tapes containing the same categories of information that plaintiff now seeks. Belber Decl. ¶ 15.

8. The Court in *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830 n. 4 (D.C.Cir.1983), also held that even when there is genuine public interest in disclosure, the information can be withheld if "the government can show that disclosure would risk circumvention of lawful agency regulation." *Id.* The Army does not dispute that the information at issue in this case would not risk circumvention of lawful agency regulation and does not invoke this branch of exemption 2. Defendant's Motion for Summary Judgment, at 4.

ly related to such. To the contrary, they are lists of Army personnel and basic information related to each individual.[9] As plaintiff points out, the cases that have developed under exemption 2 have not involved the type of information sought here, but rather typically involve internal personnel manuals, information used for evaluative purposes, or documentation marking systems.[10]

The Army contends that the information sought here is used for the internal management purposes of the Army: "[t]he data in these two data bases are generated and maintained for the exclusive purpose of supporting and facilitating internal personnel activities of the Army, such as determining assignment and promotion projections, calculating personnel strength data, and serving as the Army's data base from which it generates management reports." Brumbaugh Decl., ¶ 10. Exemption 2 does not, however, sweep so broadly. As the Supreme Court explained in *Department of the Air Force v. Rose*, 425 U.S. 352, 363, 96 S.Ct. 1592, 1600, 48 L.Ed.2d 11 (1976), the "legislative history [of FOIA] plainly evidences the congressional conclusion that the wording of Exemption 2, 'internal personnel rules and practices,' was to have a narrower reach than the Administrative Procedure Act's exemption for 'internal management' matters." Defendant's struggle to squeeze this case into the exemption 2 mold—characterizing the matter as "supporting and facilitating internal personnel activities of the Army"—is not persuasive.

█ While the Army may well find the fulfillment of its duties under FOIA, including the release of personnel lists, to be administratively burdensome, *see* Brumbaugh Decl. ¶ 15, the government is recompensed for expenses from fees charged to FOIA requesters such as plaintiff, 5 U.S.C. § 552(a)(4)(A), and, in any event, administrative inconvenience and burden are not criteria by which Congress allowed FOIA requests be judged.[11] *Tax Analysts, supra*, at 1067 (FOIA "does not confer judicial discretion to balance its dictates against the administrative burdens of disclosure"). The government's complaints of burden are certainly also less credible in light of the Army's willingness to voluntarily release this same requested information to plaintiff in 1985 and 1986. In short, plaintiff's request does not require disclosure of matter "related solely to the internal personnel rules and practices" of the Army.

Even were the threshold requirement of exemption 2 satisfied, plaintiff has demonstrated that the requested record meets the "reasonably low threshold" of being related to significant public interests. Although plaintiff's direct purpose in seeking the information is to enhance its ability to solicit subscriptions and promote sales of the *Army Times*, the proper focus here, of course, is on the public's interest, because

9. As plaintiff points out, the most obvious exemption upon which the Army might arguably withhold the lists would be exemption 6, but the Army does not claim that exemption 6 applies in this case; indeed, such an argument was rejected in *Hopkins*.

10. *See, e.g., National Treasury Employees Union v. Customs Service*, 802 F.2d 525, 531 (D.C.Cir. 1986) (crediting plans used to evaluate qualifications for applicants for certain agency positions); *Lesar v. Department of Justice*, 636 F.2d 472, 485–86 (D.C.Cir.1980) (symbols used to refer to FBI informants in FBI records); *Scherer v. Kelley*, 584 F.2d 170, 175–76 (7th Cir.1978) ("file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"), *cert. denied*, 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979); *Nix v. United States*, 572 F.2d 998, 1005 (4th Cir.1978) ("file numbers, routing stamps, cover letters and secretary initials"); *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977) ("file numbers, initials, signature and mail routing stamps and references to previous communications"). *Branch v. FBI*, 658 F.Supp. 204, 208 (D.D.C.1987) (source symbols and file numbers); *National Treasury Employees Union v. Department of the Treasury*, 487 F.Supp. 1321, 1324 (D.D.C.1980) (agency handbook analyzing collective bargaining duties).

11. Defendant argues that the "trivial administrative matters" prong of the *Scientology* court's exemption 2 analysis was "uniquely designed to shield agencies from the sheer burden of FOIA processing," Defendant's Motion for Summary Judgment, at 4, but this assumes, of course, that the matter at issue is, in fact, an internal rule of practice and that there exists no genuine public interest.

under FOIA, "the particular need of the requester is irrelevant." *Washington Post Co. v. United States Department of Health and Human Services*, 690 F.2d 252, 258 & n. 17 (D.C.Cir.1982). While it is unnecessary to analyze the first amendment dimension of plaintiff's request, it is sufficient to note, given the high regard in which the *Army Times* appears to be held by members of the service, military officers, and the public generally, and the importance of open communication on military issues affecting this country, that the broad circulation of the *Army Times* is in the public interest. That the *Army Times'* motive is commercial in nature does not detract significantly from the service that release of the requested records would provide to the public, particularly here where plaintiff is a newspaper. *See* 132 Cong. Rec. § 14298 (Sept. 30, 1986) (remarks of Sen. Leahy).[12] The Army's contention that its data bases containing the personnel roster "are not used in dealing with the public nor do they in any way regulate or impact upon the public," Brumbaugh Decl. ¶ 10, is an agency-centered perspective that ignores the public purposes furthered by plaintiff's use of the requested information. Finally, plaintiff's request in no way appears to be an illegitimate public inquiry into the functioning of an agency, which exemption 2 was designed to prohibit. *Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 670 F.2d 1051, 1065 (D.C. Cir.1981). Accordingly, the Court finds that plaintiff's request also satisfies the second prong of the *Scientology* test—*i.e.*, furtherance of the public interest.

### III. Conclusion

For the reasons set forth above, the Court finds that the Army may not properly invoke FOIA exemption 2 to withhold from plaintiff *Army Times* the requested information. Accordingly, it is hereby

12. The Court does not hold today that release of such information will always be in the public interest, for there are certainly circumstances where the contrary would be true. *See, e.g., Hudson v. Department of the Army*, No. 86–1114, slip op. at 8 (D.D.C. Jan. 29, 1987) [available on

ORDERED that plaintiff's motion for summary judgment is granted; it is

FURTHER ORDERED that defendant's motion for summary judgment is denied; and it is

FURTHER ORDERED that defendant shall release to plaintiff a magnetic tape containing the name, pay grade, and duty installation, including state and ZIP code, of all active duty Army personnel stationed in the continental United States, except for those personnel assigned to sensitive or routinely deployable units as to whom defendant contends disclosure would constitute a clearly unwarranted invasion of personnel privacy.

IT IS SO ORDERED.

WESTLAW, 1987 WL 46777] (finding that exemption 6 was proper basis to deny request by an insurance company for information on overseas military personnel who had registered motor vehicle because the public interest in disclosure was "minimal" and "not sufficient to override the serious privacy concerns raised"), *appeal docketed*, No. 87–5050.