**Arthur R. BERNKNOPF, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary, Department of Health, Education and Welfare, Don I. Wortman, acting Commissioner, Social Security Administration, Robert L. Trachtenberg, Director, Bureau of Hearings and Appeals, SSA, Defendants.**

**Civ. A. No. 78–390.**

United States District Court,
W. D. Pennsylvania.

Feb. 28, 1979.

Arthur Bernknopf, Pittsburgh, Pa., for plaintiff.

Joel B. Strauss, Asst. U. S. Atty., Pittsburgh, Pa., William M. Reinhart, Asst. Regional Atty., Dept. of Health, Education and Welfare, Region III, Philadelphia, Pa., for defendants.

OPINION

ROSENBERG, District Judge.

This matter is now before me on an action brought under The Freedom of Information Act, 5 U.S.C. § 552 (the "Act") by the plaintiff, Arthur R. Bernknopf who seeks information from his employer, a United States agency, concerning similarly situated employees. The defendants, however, claim that under this section the requested information is exempt and therefore need not be submitted.

The plaintiff is an administrative law judge in the Social Security Administration

of the Department of Health, Education and Welfare. The plaintiff had been allowed to maintain an independent outside law practice on a limited basis up to 1973. In 1976, the plaintiff was offered an outside position of part-time Endowment Fund Director of the United Jewish Federation of Greater Pittsburgh, but the authorization to engage in this activity was denied by the present administrators of the Bureau of Hearings and Appeals, SSA (the "Bureau").

On October 17, 1977, the plaintiff requested from the Personnel Officer of the Bureau, a release of information to the plaintiff including the names and addresses of the Bureau's administrative law judges who had theretofore been approved for outside work activities. The plaintiff also sought a description of the specific outside work activities, whether or not such produced monetary compensation, and the names of the approving Bureau authorities.

The defendants granted a partial list minus the identifying names and addresses of the administrative law judges. The plaintiff then requested the information on the remaining judges. This request was denied, and thereupon the plaintiff proceeded to exhaust his administrative remedies. He now seeks an injunction ordering the defendant to refrain from withholding the requested information under the Act. The defendants claim that the information requested by the plaintiff falls within 5 U.S.C. § 552(b)(2) and (b)(6).

Section 552(a)(2)(A) and (B) reads in part:
"(2) Each agency in accordance with published rules shall make available for public inspection and copying—
(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;".

Other matters are also made available with exceptions not here applicable.

The defendants, however, rely upon § 552(b)(2) which reads:
"(b) [The disclosure section] does not apply to matters that are

(1) . . .
(2) related solely to the internal personnel rules and practices of an agency;".

Other exclusions relate to national defense, foreign policy, statutory exemptions, interagency communications, personnel and medical files constituting personal privacy invasions, certain investigatory records, financial institution matters and geophysical information.

Pursuant to 5 U.S.C. § 552(a)(4)(B), the district court has jurisdiction to determine *de novo* and power to examine records *in camera* and to enjoin the agency from withholding agency records subject to the exceptions, and order production if so determined.

I held a hearing and in accordance with the provisions contained in subsection § 552(a)(4)(B) I ordered, *in camera*, and received from the agents the record of information as relates to the plaintiff's complaint. After full examination of the same, *in camera*, I am in a position to make findings in accordance with the law of the case.

 The Freedom of Information Act is a revision of § 3, the public disclosure section of the Administrative Procedure Act, 5 U.S.C. § 1002 (1964 Ed.). Section 3 was generally recognized as falling far short of its disclosure goals and came to be looked upon more as a withholding statute than a disclosure statute. *E. P. A. v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). *Mink* holds that the Act seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information, with subsection (b) representing the congressional determination that certain types of information should remain confidential if the Executive Branch so chooses (at page 80, 93 S.Ct. 827). The Act's disclosure provisions are intended to be construed broadly while the exemptions set forth in 5 U.S.C. § 552(b) must be construed narrowly. *De-*

*partment of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

The plaintiff contends that a narrow reading of the exemption combined with a broad reading of the disclosure sections mandates a finding in his favor. In support of this, the plaintiff cites *Vaughn v. Rosen*, 173 U.S.App.D.C. 187, 523 F.2d 1136 (1975). In *Vaughn*, the plaintiff was a law professor researching procedure within the Civil Service Commission. He sought intra-office memoranda on the Commission's evaluation of the way the agency's managers and supervisors were carrying out their personnel management responsibilities (at page 190, 523 F.2d at page 1139). His requests for the disclosures were denied. The question before the court was whether the documents sought were related solely to the internal personnel rules and practices of the agency, or whether there was a legitimate public interest in the information requested.

The court examined the legislative history of the Act and accepted the Senate Report as the intended explanation of § 552(b)(2), as many cases previously had held.[1]

The Senate Report states:

"Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave and the like." (S.Rep.No.813, 89th Cong., 1st Sess. (1965), p. 8.)

The court then went on to hold that in light of the Senate Report, the Personnel Management Evaluations were not exempt from disclosure by virtue of Exemption 2 (at page 194, 523 F.2d at page 1143). Its reasoning was that such reports were not matters of "routine housekeeping" such as the parking facilities, sick leave policy, and the like. Conversely, the information sought in *Vaughn* dealt with the compliance of federal agencies with policies set down by statute, executive order, and commission regulations, i. e., equal opportunity employ-

ment, labor-management relations and employment of Vietnam veterans, each of which constitutes a legitimate public interest (at page 194, 523 F.2d at page 1143).

In *Department of Air Force v. Rose, supra*, the Supreme Court considered the scope of § 552(b)(2). After examining the Senate Report discussed, the Court stated that a line must be drawn between trivial matters and those more substantial matters which might be the subject of legitimate public interest (425 U.S. at page 365, 96 S.Ct. 1592). The plaintiffs in *Rose* were law students researching disciplinary procedures at service academies. They sought access to case summaries maintained by the United States Air Force Academy concerning alleged honor code and ethics violations. In holding that exemption (b)(2) did not apply, the Court concluded that the requested summaries were significantly related to the substantive public rule of the Air Force and its Academy and were not routine matters with merely "internal" significance (at pages 368–370, 96 S.Ct. 1592).

In the case at bar, the plaintiff seeks information on fellow employees of the agency who, he asserts, were allowed to engage in outside activities in addition to their government work. It is the agency's task to decide which types of work and the amount of time involved in such employment as will not produce conflicts in or detract from government duties. These decisions are agency determinations for the physical control of its employees consistent with the agency's powers.

*Benson v. General Services Administration*, 289 F.Supp. 590, 595 (D.C.Wash., 1968) holds that " 'internal personnel rules and practices' are rules and practices of general application relating to such matters as employee use of the employer's plant and equipment, and the amount of time in each working day which is to be devoted to the employer's business and such activity." The information sought in the instant case does relate to "the amount of time in each working day which is to be devoted to the employer's business and such activity."

---

1. *Vaughn, supra*, cases cited under Note 13, page 192, 523 F.2d page 1141.

The District Court concludes that "[t]his language is consonant with the plain words of the statute, which seem to provide an exemption for material dealing solely with the physical management of the agency's work force." (at page 594). This is a narrow interpretation of the words of the statute and appears to be commonly accepted by the courts.

While I interpret the words of the statute narrowly, I interpret them both literally and technically, and so conform to the Congressional intent of the agency to be free from judicial intrusion into its "internal" physical functioning of supervising and controlling its obligatory performance of duties. Thus, the Congressional intent was to allow the agency's discretionary powers in its "internal" functioning and it is not one of which the courts, statutorily speaking, can deprive it.

■ The force of § 552(b)(2) is to define the areas of intra-agency conduct from those subjects of particular public interest. If that delineation becomes obscure, all doubts should be resolved in favor of disclosure. *Sears, Roebuck & Co. v. General Services Administration*, 384 F.Supp. 996 (D.C.D.C., 1974), aff'd. 166 U.S.App.D.C. 194, 509 F.2d 527 (1974). The control of multilateral employment of the agency's administrative law judges is purely and simply a matter of intra-agency functioning and the agency's absolute responsibility.

The plaintiff in this case differs in status from the plaintiffs in the preceding cases. Bernknopf is an employee of the agency and the information he seeks falls within those "routine housekeeping" matters to which the Senate Report refers. Senate Rep.No.813, 89th Cong., 1st Sess. (1965), page 8. Along with the regulation of lunch hours and parking facilities, or policy decisions as to sick leave, an agency must have the power to monitor the type of outside working activities of its administrative judges. The reason for such action is validly founded in a necessity to insure against possible conflicts of interest or outside or unnecessary time restraints and pressures on its employees. Such a decision is fully within the regular maintenance chores of the agency.

In interpreting the Act and the judicial determinations made in connection with this particular subject matter, I do not overlook the fact that in these modern days internal questions of employment, particularly in union matters, or in relevant employment circumstances in other areas, achievement of equal rights such as are required in EEOC matters is openly and publicly treated. I here, however, attempt to give meaning to the words contained in § 552(b)(2), "related solely to the internal personnel rules and practices of an agency", such as Congress intended its agency supervisors of employees to have and to exercise within the limits of their discretionary powers.

■ Accordingly, I hold that the defendants' action in refusing the information sought by the plaintiff is exempt under § 552(b)(2), and the plaintiff's complaint seeking to enjoin the agency from withholding such information will be denied.