**NATIONAL ASSOCIATION OF ATOMIC VETERANS, INC., Plaintiff,**

v.

**DIRECTOR, DEFENSE NUCLEAR AGENCY, et al., Defendants.**

**Civ. A. No. 81–2662.**

United States District Court,
District of Columbia.

April 13, 1984.

non-profit membership organization consisting of veterans who participated in atmospheric nuclear weapons testing and their wives, widows and offspring, seeks disclosure of the names and addresses of present and former military service members who participated in the atmospheric nuclear weapons testing program conducted at Nevada or South Pacific test sites during 1945–63. Defendants (collectively Defense Nuclear Agency or DNA) have withheld the requested information pursuant to Exemption 6 of FOIA, alleging that disclosure would constitute a "clearly unwarranted invasion of personal privacy." [2]

Now before the Court are the parties' cross-motions for summary judgment. The material facts are not in dispute. For the reasons set forth herein, the Court finds that plaintiff is entitled to summary judgment as a matter of law. Accordingly, plaintiff's motion for summary judgment will be granted and defendants must release to plaintiff the requested information.

In 1977, in response to a discovery by the Center for Disease Control of a number of cases of leukemia among participants in atmospheric nuclear testing, the Department of Defense (DOD) began a program to develop and analyze the history of atmospheric nuclear testing involving DOD personnel. The Defense Nuclear Agency then engaged in extensive publicity efforts to compile a roster of such persons, including the establishment of a toll-free telephone line and a special mailing address. Declaration of Thomas J. Haycraft at ¶¶ 2–6. Approximately 49,000 individuals have called or written DNA in connection with this program. DNA has collected the names and addresses of about 30,000 of the respondents. Affidavit of Dr. David L. Auton, Program Manager for the Department of Defense Nuclear Test Personnel Review (NTPR) Program, at ¶ 8. DNA claims that each individual who either telephoned or wrote to DNA was given a pledge of confidentiality. Declaration of

Barton F. Stichman, Dianne E. Dusman, Lewis M. Milford, Ronald Simons, Nat. Veterans Law Center, Washington, D.C., for plaintiff.

Barbara Gordon, Daniel F. Shea, Civil Division, U.S. Dept. of Justice, Washington, D.C., for defendants.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

In this Freedom of Information Act (FOIA) [1] case, plaintiff, the National Association of Atomic Veterans, Inc. (NAAV), a

---

1. 5 U.S.C. § 552 (1976).

2. 5 U.S.C. § 552(b)(6) (1976).

Thomas Haycraft at ¶¶ 7–8; Affidavit of Miriam Gates at ¶ 4.

▮ The Court shall repeat the law applicable to this case as previously set forth. *See Order,* September 12, 1983.[3] When a party seeks access to agency records withheld under FOIA Exemption 6, the Court must inquire whether the information sought is contained in personnel, medical or similar files, and if so, whether disclosure of the information would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1976); *United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 602, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358 (1982); *Arieff v. United States Dep't. of the Navy,* 712 F.2d 1462, 1466 (D.C.Cir.1983). Exemption 6 covers any information from government records which applies to a particular individual, regardless of the type of file in which it is contained. *U.S. Dep't. of State v. Washington Post Co.,* 456 U.S. at 602, 102 S.Ct. at 1961; *Washington Post Co. v. United States Dep't. of Health,* 690 F.2d 252, 260 (D.C.Cir.1982).

▮ In determining whether disclosure is "clearly unwarranted" in this case, the Court must balance the public interest in disclosure against the privacy interests of the veterans. *Id. See Dep't. of the Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). The "dominant objective" of FOIA is to provide full disclosure of agency records. *Id.* at 361, 96 S.Ct. at 1599. Moreover, Exemption 6's requirement that disclosure be

found "clearly unwarranted" indicates that the balance of interests should generally favor disclosure. *Washington Post Co. v. U.S. Dep't. of Health,* 690 F.2d at 261. The burden is on the agency to support its claim that the requested information is exempt from disclosure. *Sims v. CIA,* 642 F.2d 562, 567–68 (D.C.Cir.1980).

NAAV maintains that disclosure is in the public interest because it intends to use the names and addresses to conduct scientific and medical studies relating to the adverse health effects of exposure to atomic radiation and to inform atomic veterans of NAAV's "Self-Help Guide on Radiation" and of NAAV's atomic veteran locator service.

Dr. Susan D. Lambert of the Radiation Research Institute, in cooperation with NAAV, plans to conduct two studies. One will attempt to identify a new neuromuscular disease that has been observed in atomic veterans. *See* Affidavit of Susan D. Lambert at ¶ 5. The second will attempt to develop a set of clinical diagnostic criteria for application to individuals who may have a radiation-induced disease and a means by which a given disease can be shown to be radiation-induced. *Id.* at ¶ 6. Dr. Sidney Cobb of the Center for Atomic Radiation Studies, intends to expand upon the current medical examinations provided to atomic veterans at a project sponsored by the Center for Atomic Radiation Studies at the University of Massachusetts Medical Center. *See* Affidavit of Sidney Cobb at ¶¶ 5–6. Each of the proposed studies will

---

**3.** In its September 12, 1983 *Order* the Court permitted plaintiff to discover:

"(1) the medical and scientific studies defendants rely upon to support the allegation that one of plaintiff's stated public interest purposes for which it seeks disclosure of the names and addresses—to conduct a unique scientific and medical study relating to adverse health effects of exposure to atomic radiation—is largely duplicative of current government programs and uses; and

(2) defendants' statements to veterans involved which they rely upon to support the allegation that one of plaintiff's stated public interest purposes for which it seeks disclosure of the names and addresses—to communicate important information to these veterans—is largely duplicative of current government programs and uses."

The Court also acknowledged the persuasiveness of defendants' argument that the privacy interests of the veterans are substantial. However, that initial observation certainly does not bind the Court to now determine that those privacy interests are so significant that they outweigh the public interest in disclosure of the information at issue. *Arieff v. U.S. Dep't of Navy,* 712 F.2d 1462, 1468 (D.C.Cir.1983); *Washington Post Co. v. U.S. Dep't. of Health,* 690 F.2d 252, 262 (D.C.Cir.1982). Rather, in view of plaintiff's subsequent showing of the strong public interest in disclosure and the relatively minimal privacy interests at stake, the Court cannot conclude that disclosure would constitute a clearly unwarranted invasion of privacy. *See infra* at 1484.

focus upon the frequent nerve, muscle and joint complaints of atomic veterans and can reasonably be expected to improve the quality of the care of atomic veterans. Lambert Affidavit at ¶¶ 5–6; Cobb Affidavit at ¶¶ 5–7.

Originally, DNA had argued that NAAV's proposed studies would not serve the public interest because they would merely duplicate "programs and uses currently in effect through the government." DNA now maintains that NAAV's studies would duplicate an epidemiological study of the veterans at the South Pacific and Nevada test sites required, if feasible, by Section 601 of the Veterans' Health Care Amendments of 1983, Pub.L. 98–160, 98 Stat. 993. Defendants also doubt whether NAAV's studies will ever be accomplished because NAAV did not begin the study with its own membership and has limited financial resources. *See, e.g.,* Affidavit of Dr. David G. Borenstein at ¶ 5.

While the Court trusts that the Veterans Administration will conduct an epidemiological study, if feasible, as required by law, such a study by definition would not duplicate NAAV's proposed studies.[4] As NAAV explains, the focus of those clinical studies is on new, as opposed to recognized, diseases. Most significantly, government scientists recognize that a valid epidemiological study could not be based upon the self-selected group of veterans who contacted DNA. Affidavit of James J. Smith at ¶ 14. A clinical study, however, could use that population. Affidavits and Supplemental Declarations of Drs. Cobb and Lambert.

Thus, NAAV's proposed studies would provide a public benefit additional to any provided by the government's own proposed study. Plaintiff has sufficiently dispelled defendants' speculation that plaintiff's studies will unlikely be achieved. Written plans for the studies have been prepared and the studies have been begun, but access to more atomic veterans is needed. Supplemental Declarations of Dr.

Cobb at ¶ 7 and Dr. Lambert at ¶ 7. *See* Plaintiff's Exhibits B at ¶¶ 4–5, C at ¶¶ 5–7. The number of atomic veterans to whom NAAV now has access is insufficient to continue. Furthermore, NAAV does not intend to finance the studies itself; other non-profit organizations are assisting it. Plaintiff's Exhibits B and C.

NAAV also needs the names and addresses of atomic veterans to inform them of NAAV's "Self-Help Guide on Radiation" and NAAV's atomic veteran locator service. NAAV's Self-Help Guide is published and distributed to provide information to atomic veterans about filing a claim with the Veterans Administration for service-connected disability benefits related to their exposure to atomic radiation. The locator service is used by atomic veterans to establish contact with other atomic veterans and to obtain evidence to support a claim for service-connected disability benefits. In addition, NAAV seeks to ensure that DNA has in fact provided atomic veterans with the information as defendants have alleged. *See* Affidavit of E. Cooper Brown at ¶¶ 9–11.

Defendants maintain that because DNA has informed the veterans of benefits available to them through various means, "NAAV's attempt to do so would only be redundant and accomplish no public purpose." Defendants' Memorandum at 15; *see* Auton Affidavit at ¶ 3 and Tab F; Haycraft Declaration at ¶ 13. The Court need not evaluate the adequacy of defendants' materials to conclude reasonably that NAAV's Self-Help Guide could increase a veteran's knowledge about government programs and assist him to present more effectively a claim for benefits. Moreover, the record contains some evidence that all veterans may not be receiving information supplied by DNA. *See, e.g.,* Plaintiff's Exhibit A at ¶ 10.

With regard to the locator service, the record contradicts defendants' assertion that the evidence does not indicate its ne-

---

**4.** *Dorland's Illustrated Medical Dictionary* (25th ed. 1974), defines "Epidemiology" as "the field of medicine concerned with the determination of the specific causes of localized outbreaks of infection ... or any other *recognized* etiology." *Id.* at 529. (Emphasis supplied.)

cessity. Defendants' failure to release names and addresses of veterans has provoked this lawsuit. The government's own scientists have testified as to the difficulty of locating atomic veterans. Testimony of Dr. Seymour Jablon of the National Academy of Sciences, Defendants' Attachment 8 at 93; Testimony of Dr. Glyn Caldwell of the Center for Disease Control, Defendants' Attachment 8 at 96–97, 102.

■ Even if plaintiff's efforts do overlap the government's in full or in part, the Court agrees with NAAV that public oversight of government operations provides a public benefit. *See Arieff v. U.S. Dep't of Navy*, 712 F.2d at 1468; *Washington Post Co. v. U.S. Dep't of Health*, 690 F.2d at 264: "[T]he purpose of FOIA is to permit the public to decide *for itself* whether government action is proper." *See also* H.R.Rep. No. 1497, 89th Cong., 2d Sess. 11, 23 (1966), reprinted in 1966 U.S.Code Cong. & Ad.News 2418, 2423. Release of the names and addresses will allow NAAV to assess the effectiveness of defendants' dissemination of information to the veterans and enable NAAV to conduct its proposed studies which may shed light on the validity of the methodology used and the conclusions reached by the government in its study. Supplemental Declarations of Dr. Cobb at ¶ 6, Dr. Lambert at ¶ 6.

■ Finally, defendants argue that disclosure of the names and addresses is unwarranted under FOIA because plaintiff may obtain them from other sources, through advertising for example. The Court may, in its balancing process, consider the extent to which the requested information is otherwise available. However, such availability "strengthens the case for FOIA disclosure by suggesting that disclosure will not seriously invade personal privacy." *Washington Post Co. v. U.S. Dep't of Health*, 690 F.2d at 259; *See also U.S. Dep't of State v. Washington Post Co.*, 456 U.S. at 602 n. 5, 102 S.Ct. at

1961 n. 5 ("public nature of information may be a reason to conclude ... that the release of such information would not constitute a 'clearly unwarranted invasion of personal privacy'").

Having determined that the public interest in disclosure is great, the Court now considers whether and to what extent disclosure would create an invasion of privacy. To justify non-disclosure by Exemption 6 " 'threats to privacy interests [must be] more palpable than mere possibilities' ... and ... courts 'may properly discount [the] probability' of invasion of privacy in light of attendant circumstances." *Arieff v. U.S. Dep't of Navy*, 712 F.2d at 1467 (quoting *Dep't. of the Air Force v. Rose*, 425 U.S. at 380, 96 S.Ct. at 1607). Defendants maintain that the privacy interests here are substantial because disclosure would reveal medical matters [5] and a pledge of confidentiality was given.

■ Defendants' argument that disclosure would reveal medical matters amounts to little more than unsubstantiated speculation about possible secondary effects of disclosure. Without specifying any such medical matters, defendants state that disclosure of the veterans' names and addresses "might open them and their families to searching inquiries by the news media into the most private details of their lives." Defendants' Memorandum at 11. Defendants note that NAAV is concerned about the adverse health effects of atomic radiation. Indeed, plaintiff seeks the names and addresses in part to study those medical matters. However, mere identification of atomic veterans does not in itself implicate privacy concerns. Further inquiry by news media or other interested parties about any particular veteran's medical condition is not the sort of invasion of privacy envisioned by Exemption 6. "According to the statute, it is the very 'production' of the documents which must 'con-

---

5. This assertion represents a change from defendants' original position which was that disclosure would reveal that the veterans participated in the U.S. atomic testing program as part of their military service. Past duty assignments, however, are not normally regarded as highly

personal. *See U.S. Dep't of State v. Washington Post Co.*, 456 U.S. at 600, 102 S.Ct. at 1960; Plaintiff's Co-St.Mat.F. ¶ 12. It is noteworthy that the Court found defendants' privacy argument persuasive before this shift in focus.

stitute a clearly unwarranted invasion of privacy.' 5 U.S.C. § 552(b)(6). Obviously, that can only occur when the documents disclose information attributable to an individual." *Arieff v. U.S. Dep't of Navy*, 712 F.2d at 1468; *see also Disabled Officer's Ass'n. v. Rumsfeld*, 428 F.Supp. 454, 457–58 (D.D.C.1977); *aff'd mem.* 574 F.2d 636 (D.C.Cir.1978).

Even assuming that a pledge of confidentiality was given to each veteran who contacted DNA,[6] "such a pledge should not be given determinative weight where the public interest in disclosure is high and the privacy interest in the information would otherwise be low." *Washington Post Co. v. U.S. Dep't of Health*, 690 F.2d at 263. Otherwise, the government could subvert the requirements of FOIA at whim simply by pledging confidentiality. *Id.* In this case, the reasonable expectations of privacy created by the pledge of confidentiality were minimal at best. First, defendants have advised that no record was kept of whether any writers or callers ever requested that their names and addresses be kept confidential. Haycraft Declaration at ¶ 10. Second, the only pledge that defendants allege they gave to the veterans who wrote was that the information they provided would be protected in accordance with the Privacy Act. 5 U.S.C. § 552a. The Privacy Act does not protect against disclosure when otherwise required by FOIA. 5 U.S.C. § 552a(b)(2). *See Greentree v. U.S. Customs Service*, 674 F.2d 74 (D.C.Cir.1982). A similarly limited pledge was given to the callers. Haycraft Declaration at ¶ 7. Finally, DNA advertised that the collected data would be made available to independent scientific organizations. Plaintiff's Exhibit L. As such, veterans would have had to at least discount the significance of a pledge of confidentiality.

Balancing the competing interests, the Court readily concludes that the singularly strong interest in disclosure outweighs what appears to be the mere potential for invasion of privacy. Disclosure, therefore, is not "clearly unwarranted." *Cf. Disabled Officer's Ass'n. v. Rumsfeld*,

428 F.Supp. at 458 (public interest mandates disclosure of veterans' names and addresses although medical matters clearly implicated).

In view of the foregoing, it is, by the Court, this 13th day of April, 1984

ORDERED that defendants' motion for summary judgment shall be and the same hereby is denied; and it is further

ORDERED that plaintiff's cross-motion for summary judgment shall be and the same hereby is granted; and it is further

ORDERED that defendants release to plaintiff a list of the names and addresses of present and former military service members who participated in the atmospheric nuclear weapons testing program conducted at Nevada or South Pacific test sites during 1945–1963, and it is further

ORDERED that this cause stands dismissed.

---

6. *See* Gates Affidavit at ¶ 4; at least "some of the

callers seemed to appreciate this assurance."