Henry C. SCHWANER, Plaintiff,

v.

**DEPARTMENT OF the AIR FORCE, Defendant.**

Civ. A. No. 88–0560.

United States District Court, District of Columbia.

Aug. 1, 1988.

Craig Becker, Washington, D.C., for plaintiff.

Richard L. Huff, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This Freedom of Information Act ("FOIA") case, 5 U.S.C. § 552 (1982) & Supp. 1986, comes to the court on cross-motions for summary judgment. There are no material facts in dispute. The only issue is whether or not exemption § 552(b)(2), which permits an agency to deny a FOIA request if it relates solely to the internal personnel rules and practices of an agency, applies to the information Plaintiff Schwaner seeks.

Schwaner sells insurance. He has for many years sought and received at minimal expense lists of servicemen and women stationed at bases around the country, so that he might more easily sell insurance to them. In order that he might tap into the market of personnel at Bolling Air Force Base, on July 24, 1987, Schwaner filed another FOIA request, asking the Department of the Air Force to compile for his use a list of all enlisted personnel at the ranks of E–5 and below stationed at Bolling. He asks that the list be alphabetically arranged on a unit basis, and seeks each person's unit military address. The Air Force does not keep such lists, and must program a computer to extract the information Schwaner requests. The Air Force has been deluged by requests of private businesses seeking information relating to its personnel, and has compiled information relating to the time and expense involved in processing such requests. It opposes Schwaner's request.

FOIA provides for disclosure of information that is properly public: § 552(a) requires that the government publish a vast quantity of information in the *Federal Register* "for the guidance of the general public." It also requires agencies, upon request, to produce documents relating to: final opinions made in the adjudication of cases; policy statements of agencies, and administrative staff manuals and instructions to staff that affect a member of the general public.

In contrast to these broad disclosure provisions, Exemption (b)(2) allows agencies to withhold documents "related solely to the internal personnel rules and practices of an agency." This has been construed to mean those documents of no general interest relating to trivial administrative matters, *Founding Church of Scientology v. Smith*, 721 F.2d 828, 830 n. 4 (D.C.Cir. 1983); *Lesar v. United States Department of Justice*, 636 F.2d 472, 485–86 (D.C.Cir.

1980); *Cox v. United States Department of Justice*, 601 F.2d 1, 4 (D.C.Cir.1979), or when release of internal documents of no general interest would threaten law enforcement capabilities. *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051 (D.C.Cir.1981) (*en banc*). In *Cox*, this Circuit described Exemption (b)(2) as exhibiting "a congressional judgment that material lacking external impact is unlikely to engage legitimate public interests, the touchstone of the policies underlying FOIA." The Court then denied Cox's request for law enforcement manuals because

> "[t]he undisclosed material does not purport to regulate activities among members of the public. Nor does it set standards to be followed by agency personnel in deciding whether to proceed against or to take action affecting members of the public. Differently stated, the unreleased information is not 'secret law,' the primary target of subsection (a)'s broad disclosure provisions." *Cox*, at 5.

The language of Section (a) (the disclosure provisions) and the language of Exemption (b)(2) (exempting material solely related to the internal rules and practices of an agency) would appear not to envision a request such as Schwaner's. While it is the Air Force's practice to maintain this data, along with other miscellaneous information for purely internal convenience, (*see*, 32 C.F.R. § 286.13(a)(2)(iii) (1987), the data itself is not a practice. Nevertheless, the records are purely internal. The Air Force maintains a data base which contains selective, basic personnel information concerning all active-duty Air Force personnel assigned to Bolling. The data include information such as education and training, promotion and separation records, and dates of the servicemember's last exam. When information is needed, the Air Force extracts the data from other sources (paper copies of personnel files, medical records, dental records, flight records, and the like). The Air Force generates and maintains this information exclusively for supporting and facilitating its internal personnel activities. In short, withholding this internal personnel data does no violence to FOIA principles.

When Congress enacted Exemption (b)(2), it noted that the exemption "relates only to internal personnel rules and practices of an agency. Examples of these may be rules as to the personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave, and the like." S.Rep. No. 813, 89th Cong., 1st Sess. 8 (1965). Surely, then, the exemption encompasses a list of names and addresses, which is of less concern to the general public and more trivial. Clearly the bits of data Schwaner requests relate only to internal "house-keeping matters," if anything does, and it is well established that such information is exempted by (b)(2). *Vaughn v. Rosen*, 523 F.2d 1136, 1141 (D.C.Cir.1975). Here, as in *Founding Church of Scientology, supra*, the lists are of no general public interest and may be withheld.

Disclosure has been required under Exemption (b)(2) only when the public interest at issue has been far more compelling than in the instant case. In *Vaughn*, for example, a law professor sought Civil Service Commission reports evaluating how agencies' managers carried out personnel management responsibilities. The public has a right to such information, because it relates directly to accountability. In contrast, the personnel lists at issue have no such relevance.

Plaintiff asserts a hypothetical public interest, which, of course, does not concern him at all, but which is simply concocted by his able lawyer. By creating "direct access" to public employees, Schwaner says that his request fosters the government accountability FOIA seeks to promote. This argument is surely made with tongue in cheek. While *someone* at sometime might be able to use the plaintiff's list to further legitimate research or to contact personnel on a matter of greater importance, as, for example, lists of names and addresses were important to finding potential victims of atomic radiation in *National Association of Atomic Veterans v. Director, Defense Nuclear Agency*, 583

F.Supp. 1483 (D.D.C.1984), that is not the case here. By the time Schwaner's hypothetical researcher or watchdog sought the list prepared at his behest, it would undoubtedly be outdated. And while the overall deployment of military personnel is perhaps a public matter, subject to some security restrictions, release of the names and locations of lower-level military personnel is not germane to this interest.

The list, and plaintiff's vague assertions of a theoretical public interest, simply do not meet the "low threshold" test of being "relate[d] to significant public interests" in this routine commercial context. *Founding Church of Scientology, supra,* at 830, n. 4, citing *Department of Air Force v. Rose,* 425 U.S. 352, 360–62, 96 S.Ct. 1592, 1598–1600, 48 L.Ed.2d 11 (1976). If the contrary is accepted, then as electronic filing expands to create ever larger reservoirs of miscellaneous personal data, a wealth of personal information will be placed at hazard and normal considerations of individual privacy will be jeopardized. In order to target its mailings and phone calls in ever more precise and intrusive ways using the highly sophisticated tactics of modern marketing, the creative FOIA requester will tap into the vast databanks of government computers. Perhaps, after obtaining data from FOIA requests, they will sell their lists to other merchants interested in the military or civil service markets. While this threat to personal liberties is far from fatal, the government should not be put to the cumulating expense of processing the requests of merchants, nor should FOIA be interpreted as requiring this intrusion of the privacy of government employees.

In related FOIA issues, this Circuit has not equated commercial interests with the public interest. *See, e.g., National Treasury Employees Union v. Griffin,* 811 F.2d 644, 649 (D.C.Cir.1987); *LaSalle Extension Univ. v. Federal Trade Commission,* 627 F.2d 481, 483–84 (D.C.Cir.1980); *Fenster v. Brown,* 617 F.2d 740, 744–45 (D.C.Cir.1979). With regard to exemptions from disclosure, Courts rightly distinguish between non-profit institutions which seek to serve the addressees and commercial enterprises whose requests are for their own profit. *Compare, Disabled Officer's Ass'n v. Rumsfeld,* 428 F.Supp. 454 (D.D.C. 1977), *aff'd. mem. sub. nom., Disabled Officer's Ass'n v. Brown,* 574 F.2d 636 (D.C. Cir.1978) (permitting disclosure to a nonprofit organization designed to serve the interests of retired disabled officers of the Armed Forces) *with Wine Hobby USA v. IRS,* 502 F.2d 133 (3d Cir.1974) (names and addresses of amateur wine makers exempt from disclosure "for private commercial exploitation."). *Id.,* at 137. Schwaner's reliance on *Army Times Publishing Company v. Department of the Army,* 684 F.Supp. 720 (D.D.C.1988), is misplaced. In upholding a newspaper's request for lists of names and addresses of Army personnel, the Court described the *Army Times'* integral relationship to the Army and to Army personnel. *Id.,* at 720–21. The requests of insurance companies bear no such relationship to the public servants whose names and addresses Schwaner seeks. The Court in *Army Times* specifically did *not* hold that release of names and addresses will *always* be in the public interest, and in fact said that "there are certainly circumstances where the contrary would be true." *Id.,* at 724, n. 12. Plaintiff Schwaner's interest in selling insurance does not rise to the level of public interest, and does not justify an invasion of the privacy of government employees. Release of personal information to commercial solicitors is unwarranted in the absence of specific permission to do so from the government employee, or in the absence of a clear, unique connection between the purpose of the requestor and the interests of the persons whose names and addresses are being sought.

While Courts cannot make decisions based on the quality of publication or political orientation of a FOIA requester, distinctions can be made between the requests of those seeking knowledge as to the workings of their government and requesters who merely seek to gain a toehold in a new market—government personnel.

Moreover, when considering an Exemption (b)(2) request, the Court is permitted to

consider the administrative burden imposed on agencies in processing FOIA requests when internal matters are not likely to be the subject of public interest. "[T]he general thrust of the exemption is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." *Rose, supra,* 425 U.S. at 369–370, 96 S.Ct. at 1603; *See also, Martin v. Lauer,* 686 F.2d 24, 34 (D.C.Cir.1982); *Falzone v. Department of the Navy,* Civil No. 85–3862, slip op. at 11 (D.D.C. Nov. 21, 1986) [available on WESTLAW 1988 WL 128474]. Here, the administrative burden is heavy: a new computer program had to be created, FOIA processing itself takes over ten hours, and computer time had to be obtained from a central computer serving ten personnel offices. Because of the overall shortage of computer availability, the expedition of FOIA requests delays the execution of other tasks related to the primary purpose of the Air Force. Much of the expense of processing such requests cannot even be charged to the requester, although the FOIA legislation provides for some "user fees." 5 U.S.C. § 552(a)(4)(A). This is as it should be: were government agencies to charge, by the hour, for the full costs of processing FOIA requests, the legitimate requests of those seeking information related to matters of genuine public interest could well be impeded.

To require the compilation of personal records of government personnel at the behest of any entrepreneur who files a FOIA request is to contort the purpose of FOIA. Its purpose is a laudable and lofty one: "to pierce the veil of agency administrative secrecy and to open agency action to the light of public scrutiny." *Rose, supra,* 425 U.S. at 361, 96 S.Ct. at 1599. This goal does not encompass subjecting the personnel of the government to unsolicited intrusions on their privacy with no public justification. Here, the request for the seventy-page computer printout does not seek to shed light on agency action or government secrecy. Fulfilling the request will not help to inform the citizenry of the workings of its government, or foster public accountability by monitoring governmental action. A few servicemembers might buy insurance from Schwaner as a result of the release, but giving a competitive advantage to salespersons who avail themselves of FOIA was hardly the driving idea behind FOIA. Given the administrative burden, the flood of requests from commercial enterprises will lead to such frustration among agency personnel, judges, and perhaps ultimately, Congress, that the truly meritorious claims for public information will be delayed, if not frustrated entirely.

Schwaner's request points to the structural problem of burdening public employees to a greater extent than private employees. Public servants have given up some privacy already; but to compel the government to expose its workers to any solicitor who asks for names, addresses, and, implicitly, rates of pay, is to make public service ever less attractive. Why should someone working in the military have less privacy than someone working, say, for IBM or Boeing or General Electric, corporations which manufacture goods for the military? Did Congress really intend to open all government workers to exposure from creative solicitors, while their counterparts in the private sector remained shielded by their employers? Did Congress intend to publicize the names, addresses and rates of pay of all government workers? To grant this request would open personnel records to the pruriently curious and the doggedly entrepreneurial. *See, Lesar, supra,* at 487–88. Federal buildings may be closed to solicitors, to enable federal workers to go about their work in peace. But equally distracting could be the phone calls and pamphlets of commercial FOIA requesters, and agencies should be able to screen workers from these distractions.

Through its regulations, and its opposition to FOIA requests such as Schwaner's, the military is attempting to strike a responsible balance between disclosure under FOIA and protecting privacy. This balance should not be undone by providing for full disclosure, without regard for personal privacy and administrative burdens, when no

**8**

public interest justifies disclosure. Summary judgment is granted in favor of the Department of the Air Force and denied Plaintiff, and an appropriate order is filed herewith.

### ORDER

For the reasons set forth in the Court's Memorandum filed this day it is hereby

ORDERED that defendant's motion for summary judgment is granted and the complaint is dismissed; and it is further

ORDERED that plaintiff's cross-motion for summary judgment is denied.