Henry C. SCHWANER, Appellant,

v.

DEPARTMENT OF the AIR FORCE.

No. 88–5341.

United States Court of Appeals, District of Columbia Circuit.

Argued March 16, 1989.

Decided March 16, 1990.

Rehearing Denied May 9, 1990.

Craig Becker, for appellant.

Richard L. Huff, Atty., U.S. Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BUCKLEY and WILLIAMS, Circuit Judges, and GEORGE H. REVERCOMB,* United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

Dissenting opinion filed by District Judge REVERCOMB.

STEPHEN F. WILLIAMS, Circuit Judge:

Appellant Henry Schwaner is an insurance agent. In the hopes of finding new customers, he invoked the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988), to request from the Department of the Air Force a roster containing the names and military duty addresses of the five lowest ranks of personnel stationed at Bolling Air Force Base. The Air Force denied the request, relying on § 552(b)(2), which exempts "matters that are ... related solely to the internal personnel rules and practices of an agency."

Schwaner filed suit in district court, which granted summary judgment for the Air Force. *Henry C. Schwaner v. Department of the Air Force*, 698 F.Supp. 4 (D.D.C.1988). The district court first recognized that:

> The language of ... Exemption (b)(2) ... would appear not to envision a request such as Schwaner's. While it is the Air Force's practice to maintain this data, along with other miscellaneous information for purely internal convenience, the data itself is not a practice.

*Id.* at 5 (citation omitted). Nevertheless the court held that Schwaner's request was subject to exemption 2 because the records were "purely internal." *Id.* The district court then weighed the public interest in the disclosure of such lists and, finding little or none, held the exemption applicable. As the list does not bear an adequate relation to any rule or practice of the Air Force as those terms are used in exemption 2, we reverse.

Our cases have sought to give exemption 2 some structure by adopting a two-step process. "First, the material withheld should fall within the terms of the statutory language." *Founding Church of Scientology, Wash. D.C. v. Smith,* 721 F.2d 828, 830 n. 4 (D.C.Cir.1983). If so, the agency may defeat disclosure by proving that either "disclosure may risk circumvention of agency regulation", *Department of the Air Force v. Rose,* 425 U.S. 352, 369, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976), see also *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1074 (D.C.Cir.1981) (en banc) (risk of circumvention of statutes), or "the material relates to trivial administrative matters of no genuine public interest," *Founding Church of Scientology,* 721 F.2d at 830 n. 4.

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

In a series of cases addressing whether the requested information related sufficiently to *internal* concerns of the agency, we framed the initial test as one of "predominant internality." See *Crooker*, 670 F.2d at 1074. The qualifier "predominant" arose out of a recognition that if the word "solely" (in the phrase "related solely") were interpreted literally and absolutely, exemption 2 would cover nothing at all. As Judge Leventhal wrote in a separate concurrence in *Vaughn v. Rosen*, 523 F.2d 1136, 1150–51 (D.C.Cir.1975), "there are few events ... that occur without so much as a tiny ripple effect outside their area of prime impact." On the other hand, to disregard "solely" would make the exemption all-encompassing. *Id.* To escape the all-or-nothing dilemma, Judge Leventhal proposed that the "matter" must relate "predominantly" to internal agency rules and practices, *id.* at 1151, and the court *en banc* adopted his formula in *Crooker*, 670 F.2d at 1056–57, 1074.

We have often applied the "predominant internality" test without emphasizing the words "rules and practices." See, e.g., *NTEU v. U.S. Customs Service*, 802 F.2d 525, 528 (D.C.Cir.1986). But in such cases the requested information was typically a rule or practice in the most literal sense. See, e.g., *id.* (rules for evaluating job applicants); *Crooker* (training manual for agents); *Cox v. Dep't of Justice*, 601 F.2d 1, 4–5 (D.C.Cir.1979) (marshal's manual); *Ginsburg, Feldman & Bress v. Federal Energy Administration*, 591 F.2d 717, 723, vacated and reheard en banc, 591 F.2d 752 (D.C.Cir.1978) (affirming by an equally divided vote district court's judgment that guidelines and instructions for audits were within exemption 2). For similar cases from other circuits, see *Kaganove v. EPA*, 856 F.2d 884 (7th Cir.1988) (guidelines and specifications for employee promotions); *Dirksen v. Dep't of Health and Human Serv.*, 803 F.2d 1456 (9th Cir.1986) (internal processing guidelines for medicare claims); *Hardy v. Bureau of Alcohol, Tobacco & Firearms*, 631 F.2d 653, 656–57 (9th Cir. 1980) ("raids and searches" manual); *Cox v. Levi*, 592 F.2d 460 (8th Cir.1979) (FBI manual of rules and regulations); *Windels,*

*Marx, Davies & Ives v. Dep't of Commerce*, 576 F.Supp. 405, 411–13 (D.D.C. 1983) (computer program for processing audits).

■ As the government justly stresses, information need not actually *be* "rules and practices" to qualify under exemption 2, as the statute provides that matter "related" to rules and practices is also exempt. In *Department of the Air Force v. Rose*, 425 U.S. 352, 369, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976), for example, the materials requested were summaries of cases decided by the Air Force Academy's Honor Committee, the body charged with enforcing its Honor and Ethics Code. Though the actual decision in *Rose* was that exemption 2 could not defeat that particular request, the Court apparently assumed that the material was related closely enough to "rules and practices" that exemption 2 was a potential defense. While case summaries are not "rules and practices" themselves (as the Honor Code itself would be), they do manifest and implement the rules and practices of the Academy relating to the conduct of cadets. The Academy in fact distributed the summaries to the cadets "precisely in order to assure their compliance with the known content of the Codes." *Id.* at 364–65, 96 S.Ct. at 1600–01. Thus the Court evidently regarded the summaries as part of the "content" of the Codes, broadly conceived, as one might speak of judicial decisions becoming part of a statute for purposes of a party's accommodation of his conduct to the legislative command.

The government draws a poor parallel between the documents in *Rose* and the material requested here. It argues that the personnel data sought here is similar to the case summaries from the Honor Committee, as it is "exclusively derived from, and thus [is] 'related solely to,' the Air Force's 'practice' of extracting selected personnel data from [various] files ... and data bases and compiling them into the computerized Advanced Personnel Data System." Appellee's Brief at 11. The argument itself makes clear that the only "practice" to which the material is related

is the practice of collecting the data. As bureaucracy is nothing if not a creature of habit, the sweep of the claim is broad indeed, excluding only (predominantly internal) information collected on an official frolic.

The government can cite only one decision that even arguably would extend *Rose* to encompass a list of names and duty addresses. In *Bernknopf v. Califano*, 466 F.Supp. 319 (W.D.Penn.1979), the court exempted material describing the outside work activities of each agency administrative law judge that had been approved by the agency. The requester—himself an ALJ for the agency—had asked for names and addresses of the ALJs along with the outside work data. The agency had turned over a partial list and had deleted the names and addresses of the judges. The requester appears not to have objected to the name-and-address deletion; his primary concern was evidently to secure the agency's outside work rulings for the ALJs as to whom the agency had turned over nothing. (As an ALJ who had recently been denied authorization for outside work, *id.* at 320, he had an obvious interest in discovering the agency's practice in approving such work.) The district court found that the *"decisions* [were] agency determinations for the physical control of its employees consistent with the agency's powers." *Id.* at 321 (emphasis added). Thus, like *Rose*'s Honor Code case summaries, they were adjudicatory decisions manifesting the agency's "practice" for control of personnel, and implementing and reflecting its rules. This is a far cry from information that manifests only an agency's practice of collecting information.

■ Adjudicatory decisions are but one species of information that can be withheld because it is closely "related" to a rule or practice. Thus, courts have also exempted materials that are so closely related to rules and practices that disclosure could lead to disclosure of the rule or practice itself. For example, this court has held that an agency can delete sensitive notations on documents where they indicated an agency's practices as to their internal rout-

ing and distribution. See *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 485–86 (D.C.Cir.1980); *Founding Church of Scientology*, 721 F.2d at 831. The materials in these cases fall handily within the statutory requirement of being "related" to agency rules or practices in that they bear upon, or cast light upon, those practices. Moreover, in these cases, the government's asserted interest in preventing disclosure (the second step of the exemption 2 test) was to protect the identity of FBI informants, *Lesar*, 636 F.2d at 486, or to prevent the circumvention of agency regulation, *Founding Church of Scientology*, 721 F.2d at 831, not that the underlying rules were too trivial to justify the nuisance of collection and disclosure. See *Rose*, 425 U.S. at 369–70, 96 S.Ct. at 1603–04. Judicial willingness to sanction a weak relation to "rules and practices" may be greatest when the asserted government interest is relatively weighty.

■ The government also obliquely invokes the well-chewed legislative history of exemption 2, in which the Senate and House reports reflect, as is well recognized, a potentially serious conflict. See *id.* at 362–70, 96 S.Ct. at 1599–03. The government characterizes the Senate Report as supporting exemption of all "trivial administrative matters." Brief for Appellee at 12. As did its treatment of the cases, this wrenches language out of context. The Senate Report said only:

Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be *rules* as to personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave, and the like.

S.Rep. No. 813, 89th Cong., 1st Sess. 8 (1965) (emphasis added). As the examples were all of trivial rules, interpreters have read the report as reflecting an intent to protect only such trivia. See *Rose*, 425 U.S. at 365, 369–70, 96 S.Ct. at 1601–03. The House Report, by contrast, appeared to reflect a readiness to allow disclosure of all trivia (rules or not) and to withhold only more important rules and practices:

2. Matters related solely to the internal personnel rules and practices of any agency: Operating rules, guidelines, and manuals of procedure for Government investigators or examiners would be exempt from disclosure, but this exemption would not cover all "matters of internal management" such as employee relations and working conditions and routine administrative procedures which are withheld under the present law.

H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966). It appears that the conflict is to be reconciled by protecting trivial rules and practices, following the Senate, and nontrivial ones whose disclosure would circumvent agency regulation, following the House. See *Rose*, 425 U.S. at 369, 96 S.Ct. at 1603; *Founding Church of Scientology*, 721 F.2d at 830 n. 4 (2d paragraph). None of this in the slightest supports the idea that all trivial information may be withheld simply because it manifests an agency practice of *collecting* the information.

■ The government draws another argument from the legislative history. Relying on the Senate language for the proposition that it could withhold "the parking, dining and sick call arrangements" for the junior enlisted personnel at Bolling, it claims it must be free to withhold "the addresses of the units to which they are assigned." Appellee's Brief at 13. Thus if parking information may be withheld because it reflects the agency's parking assignment rules, duty assignment information may be withheld because it reflects duty-assignment practices.

Of course the Senate report does *not* say that any *information* as to parking arrangements may be withheld under exemption 2; it says only that "rules" as to it and kindred trivia may be withheld. The government's argument is therefore that a list of individual parking assignments is related to—casts a significant light upon—parking assignment practices, and is withholdable, and that a list of duty addresses is similarly related to duty assignment practices, and is equally withholdable.

In a broad sense, of course, any list sheds some light on a rule or practice. It necessarily reflects someone's decision that the enumerated persons or things fell within some defining term, and any term implies at least a practice; if the conduct connoted by a word were unique, it would mean nothing unless accompanied by, say, pictures or recordings of the event. But lists do not necessarily (or perhaps even normally) shed significant light on a rule or practice; insignificant light is not enough.

But even if a list of parking assignments were exempt as so closely related to agency parking rules (a proposition we reject), that would not sweep up the information sought here. The request is for names and duty addresses, *not* unit assignments.[1] The Air Force obviously follows "practices" in making assignments (presumably matching talent with need), and assignments are performed at specific locales. But it does not follow that the Air Force has a practice, in the conventional sense, of relating specific talents to specific *locales*. A list of people having the U.S. Courthouse, 333 Constitution Avenue, Washington, D.C., as their duty addresses says virtually nothing about government practices in staffing the federal courts. It is a manifestation of that practice only in the most tenuous sense.

To stretch the word "related" as the government proposes would be to fall into precisely the error against which Judge Leventhal cautioned in *Vaughn*, and make the exemption "all-encompassing." 523 F.2d at 1150. Perhaps the solution is to extend his concept of "predominance" to this issue as well as the problem of internality. In any event, there is a chasm between the case summaries in *Rose*, marking out the contours of the Air Force Academy's Honor and Ethics Codes, and a list of personnel and their duty addresses. For the latter, the only links to government

---

1. Schwaner's request was primarily for a list of names and addresses. Though the district court stated that he wanted these "alphabetically arranged on a unit basis," *Schwaner*, 698 F.Supp. at 4, he in fact asked for this only in the alternative, requesting the addresses be arranged "either alphabetically but preferably alphabetically on a unit basis." Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute ¶ 1.

practices are the link to data-collecting practices, which is shared by virtually all government information, and the link to duty assignment rules and practices, which is tenuous and indirect. These are not enough.

A generic internal trivia exemption might be sound policy. It would, however, entail swarms of court decisions identifying and "weighing" the public interest in disclosure, a task for which courts are not especially well suited. See *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, —— U.S. ——, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989) (acknowledging concern over case-by-case balancing under exemption 7(C)); cf. *Crooker*, 670 F.2d at 1074 n. 60 ("Nor is it for this court to decide which disclosures are in the public interest."). Of course once the government gets over the threshold test under exemption 2 a court must face that. But to dilute the threshold by ignoring the words "rules and practices" would greatly increase the frequency of such decisions. In any event, whatever the case for such an exemption, Congress did not enact it.

\*     \*     \*     \*     \*     \*

Finding the requested list not to be "related solely to ... [agency] rules and practices," we need not reach the second step of the analysis, which here would entail the weighing of the "public interest" in disclosure against the government's interest in avoiding the burden of producing the data. See *Rose*, 425 U.S. at 369–70, 96 S.Ct. at 1603. Accordingly, we must reverse and remand for further proceedings consistent with this opinion. Repugnant as it may seem to order disclosure to an insurance agent who seeks only a pool in which to fish for commissions, the principle of disregarding the identity of the requester, see *Reporters Committee*, 109 S.Ct. at 1480, means that only by allowing Schwaner's claim can we keep exemption 2 within its proper confines.

*So ordered.*

REVERCOMB, District Judge, dissenting:

As the majority recognizes, this court has "often applied the 'predominant inter-nality' test without emphasizing the words 'rules and practices.'" However, the majority fails to establish by what standard it is now applying the requirement of "rules and practices" to the material in the instant case. Rather, the opinion cites a number of cases where "the requested information was typically a rule or practice in the most literal sense" and then concludes that the material at issue here is not a "rule or practice." However, while the factual circumstances heretofore presented to this court have been fortuitously limited to what the majority opinion characterizes as rules and practices "in the most literal sense," this is hardly a determinative means by which to exclude the material in the instant case from the statutory language. The decisions upon which the majority relies do not purport to define or interpret the phrase "rules and practices" and nothing in those decisions suggests that the compilation of a list of names and addresses of personnel at Bolling Air Force Base would not fall within the scope of "rules and practices."

The majority appears not to distinguish a "rule" from a "practice" but conflates the two terms. In a "most literal sense," this judge would read "practice" to have a more expansive meaning than "rule" and to encompass the information at issue in this case. Indeed, this judge cannot imagine a personnel practice by an agency that could be more fundamental than obtaining and compiling the names and addresses of its employees. The majority discounts this practice because it is a "practice of collecting the data" which the agency performs merely as "a creature of habit...." This view, however, assumes that the names and addresses of the personnel were collected merely as a futile exercise and ignores the legitimate management and administrative needs of the agency in compiling such information.

The majority's application of "rules and practices" in the instant case is fundamentally inconsistent with the purpose of exemption two and the policies of FOIA it-

self. In determining what constitutes a "rule or practice" it is imperative that the phrase be interpreted in light of the general thrust of the exemption and the fundamental purpose of FOIA.[1] As the Supreme Court has stated in *Department of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the purpose of exemption 2 "is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." *Id.* at 369–70, 96 S.Ct. at 1603. Moreover, as this court has previously recognized, exemption 2 embodies "a congressional judgment that material lacking external impact is unlikely to engage legitimate public interest, the touchstone of the policies underlying" the Freedom of Information Act. *Cox v. Department of Justice*, 601 F.2d 1, 4 (D.C.Cir.1979); *see also Martin v. Lauer*, 686 F.2d 24, 34 (D.C.Cir.1982) (exemption 2 "serves to relieve the agency from the administrative burden of processing FOIA request when internal matters are not likely to be the subject of public interest"). The majority's "interpretation" of "rules and practices" to exclude the material in the instant case has now turned the fundamental policy of exemption 2 and FOIA on its head. As the instant case demonstrates, agencies in fact will now be required to suffer the administrative burden of providing individuals with material which is of no legitimate public concern. Moreover, in addition to their executive responsibilities, agencies now must also serve as a clearing house of routine and trivial information which is open to the personal whims or commercial interests of any individual.

The principal rationale that the majority offers against reading the "rules and practices" to include "generic internal trivia" is because it would "entail swarms of court decisions identifying and 'weighing' the public interest in disclosure, a task for which courts are not especially well suit-ed." Whether well-suited or not, the role of determining the public interest under exemption 2 is precisely the role which the legislature has given the court under the statute where, as the majority recognizes, "once the government gets over the threshold test under exemption 2 a court must face that."

Because this judge finds the material to be within the scope of "rules and practices" the material must still be analyzed to determine whether, under the statutory language, it is an *internal* rule or practice. Since information which is "internal" to an agency might have some significance outside the agency, and almost any information might have *some* link to external matters, this court has looked to whether the information is "predominantly" internal. *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1056–57 (D.C.Cir. 1981) (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1150–51 (D.C.Cir.1975)).

The information sought here meets the test of "predominant internality." The list of personnel names and addresses is, if anything, *less* closely related to external concerns than the examples listed in the legislative history, which could at least embody substantive policies relating to sick leave, parking regulations, or lunch hours. The data base from which appellant wants to extract a list of names was compiled for the administrative convenience of the Air Force. It has no apparent uses beyond personnel management at Bolling Air Force Base. It would require the courts to engage in speculation to attempt to find a use for such a list which had a purpose other than the facilitation of personnel policies and practices at Bolling Air Force Base. No meaningful suggestion has come from appellant which indicates any use of the information by the Air Force going beyond the management of its personnel, and it is virtually self-evident that "the management of its own employees is a matter of intra-agency functioning...."

---

1. In considering what material was "internal" to an agency within the statutory language of exemption 2, this court recognized that its interpretation required a pragmatic approach which would effectuate the purpose of the exemption within the overall scheme of the Freedom of Information Act. *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1056–57 (D.C.Cir.1981).

**800**

*National Treasury Employees Union v. Customs Service*, 802 F.2d 525, 531 (D.C. Cir.1986).

However, an exemption 2 analysis does not end with the determination that the information sought is related to an internal rule or practice; the information must also be of no genuine public interest. The Supreme Court held in *Department of Air Force v. Rose* that exemption 2 is not applicable to matters subject to a "genuine and significant public interest." 425 U.S. at 369–70, 96 S.Ct. at 1603. As this court has held, "if the material relates to trivial administrative matters of no genuine public interest, exemption would be automatic under the statute." *Founding Church of Scientology v. Smith*, 721 F.2d 828, 830 n. 4 (D.C.Cir.1983). Thus, "[i]f withholding frustrates legitimate public interest ... the material should be released unless the government can show that disclosure would risk circumvention of lawful agency regulation [or statutes]." *Id.* As in *Department of Air Force v. Rose*, even if information is found to be "predominantly internal," it could still be released if it implicates a legitimate public interest.

Since the list Schwaner seeks is a predominantly internal document, the issue, therefore, becomes whether withholding it would frustrate a legitimate public interest. In making that determination, the agency and the courts must look to the core purposes of FOIA, rather than to the individual requester's motivations. "Except for cases in which the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request." *Department of Justice v. Reporters Committee for Freedom of the Press*, — U.S. ——, 109 S.Ct. 1468, 1480, 103 L.Ed.2d 774 (1989). Schwaner is not put at a *disadvantage* because the purpose of his request is to obtain a list of names for use as business prospects. However, like any other request, Schwaner's should be evaluated in terms of whether it has any relationship to the core purposes of FOIA in determining whether release of the information he seeks implicates the public interest. While a commercially-minded requester is as enti-

tled to information as any other, the existence of a commercial motivation is not to be equated with "the public interest." *Cf. National Treasury Employees Union v. Griffin*, 811 F.2d 644, 647–48 (D.C.Cir. 1987). Appellant's commercial motivation does not make him less worthy of receiving information about the government, but "the disclosure of names of potential customers for commercial business is wholly unrelated to the purposes behind the FOIA and was never contemplated by Congress in enacting the act." *Wine Hobby USA v. IRS*, 502 F.2d 133, 137 (3d Cir.1974). This simply means that a commercial purpose for a request is not enough, by itself, to satisfy the public interest exception to exemption 2.

The Supreme Court's most recent examination of the nature of the public interest in FOIA cases was in the context of the privacy exemption. *Reporters Committee*, 109 S.Ct. at 1481. There, the Court reaffirmed the idea advanced in *Rose*, (an exemption 2 case) that "the basic purpose of the Freedom of Information Act [is] 'to open agency action to the light of public scrutiny.'" *Id.* The Court went on to *link* that purpose to public interest analysis in holding the public interest in information sought under FOIA must be within "the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 1482. So it would appear that the public interest is grounded in a nexus between the information sought and the central purposes of FOIA. Whether information sought under FOIA is a matter of genuine public interest will depend on whether the request serves FOIA's core purposes, *i.e.*, "to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny." *Id.* In essence, the question is whether the information sought would improve the public's understanding of the way in which government operates.

Appellant asserts that the list he seeks meets that test because it might prove useful to a reporter writing a story about the abusive treatment of enlisted men by superior officers at Bolling Air Force Base. In such a case, he argues, the requested information would be infused with a public interest because it could lead to other infor-

mation that might shed light on the operation of a government facility. The problem with this argument is that it relies on sheer speculation. This judge finds nothing in the cases dealing with exemption 2 to suggest that agencies, in responding to a FOIA request, are required to accommodate interests that are essentially conjectural. In fact, the cases suggest the contrary. The Supreme Court has stated that exemption 2 relieves agencies of the obligation to disclose internal matters "in which the public could not *reasonably* be expected to have an interest." *Rose*, 425 U.S. at 369–70, 96 S.Ct. at 1603 (emphasis added). In like manner, this court has asserted that the exemption protects material that is "not *likely* to be the subject of public interest." *Martin v. Lauer*, 686 F.2d at 34 (emphasis added). While a hypothetical investigation may rise to the requisite threshold to require agency disclosure, the *Martin/Rose* tests imply a more immediate and tangible public concern than that argued by Schwaner in the instant case.

It is always possible to conjure up a web of circumstances that could invest virtually *any* internal procedure with a potential public interest. Thus if exemption 2 is to be applied to FOIA requests in any meaningful way, agencies—and the courts—should limit their inquiry to ascertaining whether the asserted public interest is genuine rather than speculative. Otherwise, the exemption will be stripped of much of its utility and agencies will be subjected to the administrative burdens that Congress intended that they be spared.

This is not to say, of course, that lists of names and addresses maintained by the military may not be of sufficient public interest to warrant disclosure under FOIA. In *National Ass'n of Atomic Veterans v. Director, Defense Nuclear Agency*, 583 F.Supp. 1483 (D.D.C.1984), for example, the agency declined the request for a list of former servicemen who had been exposed to radiation in connection with atmospheric nuclear arms tests, invoking exemption 6 in order to protect the privacy of the former servicemen. The Association justified its request largely on the basis that it was conducting two medical studies designed to identify a new radiation-associated neuro-

muscular disease and to develop clinical diagnostic criteria for application to individuals exposed to radiation during the course of those tests. The court concluded, on the basis of the evidence presented, that the studies were serious, that they could not be properly conducted without access to a list of those who had been exposed, and that the public interest was such as to give rise to a "singularly strong interest in disclosure." *Id.* at 1485–86, 1488. Although recognizing that in exemption 2 analysis a less compelling interest than that required for exemption 6 could allow a FOIA requester to overcome an agency's reasons for withholding under the respective exemptions, the facts in *Atomic Veterans* underscore the insubstantial nature of appellant's claim of public interest in this case.

Because the material sought by appellant is related solely to internal personnel rules and practices, and is not the subject of genuine public interest, this judge would affirm the judgment of the District Court.