**MARICOPA AUDUBON SOCIETY, a non-profit Arizona corporation, and Dr. Robin Silver, Plaintiffs–Appellants,**

v.

**UNITED STATES FOREST SERVICE and Jack Ward Thomas, Chief, United States Forest Service, Defendants–Appellees.**

No. 95–17107.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1996.

Decided March 7, 1997.

Matthew Kenna, Kenna & Associates, Durango, Colorado, for plaintiffs-appellants.

Michael Johns, Assistant United States Attorney, Phoenix, Arizona, for defendants-appellees.

Before: BOOCHEVER, REINHARDT and RYMER, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge.

As in the companion case filed today, *Maricopa Audubon Society v. United States Forest Service*, 108 F.3d 1082 (9th Cir. 1997) the Maricopa Audubon Society and one of its members, Dr. Robin Silver (collectively referred to as "Audubon"), appeal the partial denial of a request for information from the United States Forest Service pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Here, the Forest Service withheld portions of an internal investigative report on allegedly illegal and unethical management of the Southwestern Region of the Forest Service, and portions of a letter from one of the accused officials in response to the allegations that triggered the inquiry. The Forest Service argues that the withheld materials reveal its "deliberative process" and therefore fall within exemption 5 of FOIA, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The district court granted summary judgment in favor of the Forest Service. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

In November of 1993, thirteen environmental and conservation organizations sent a joint letter to appellee Jack Ward Thomas, Chief of the Forest Service. This letter contained a variety of allegations directed against the management of the Southwestern Region of the Forest Service and concluded by calling for the replacement of the Regional Forester and his deputy. In the letter, the groups alleged that the Regional Forester and his deputy had undermined the Endangered Species Act by attempting to prevent the listing of the Mexican spotted owl as a threatened species; that the two officials had failed to comply with settlement agreements governing logging in certain National Forests; that they had created hostile relations with the environmental community; that they had alienated other state and federal conservation agencies; that they had failed to check timber theft from national forest land; and that they had ostracized one of their own employees, a biologist, in retaliation for the views expressed in his research. The environmental organizations also issued a press release alleging that the Forest Service had allowed racist attitudes toward its Native American firefighters in the Southwestern Region to go unchecked. In response, the Regional Forester wrote an eight-page letter to Thomas in which he denied each of the allegations and requested that an independent inquiry be conducted. Acting upon the Regional Forester's request and his own concerns, Thomas engaged Dr. Laurence Jahn, an independent consultant, to visit the Southwestern Region and to evaluate the complaints. Jahn's report, completed in February of 1994, recounts the factual background and discusses the merits of each allegation.

On March 22, 1994, acting on behalf of the Maricopa Audubon Society, appellant Dr. Robin Silver wrote to Thomas to request "[a] complete copy of the March 1994 report by Laurence R. Jahn concerning Forest Service activities in Region 3" along with "all accompanying documents and documentation." The Forest Service denied the request on the ground that the report was generated as part of the agency's "deliberative process" and therefore fell within exemption 5. Thomas explained in a written declaration that he sought the report "as a tool to help [him] evaluate ongoing management operations" in the Southwestern Region, and that he select-

ed Jahn for this purpose in the hope that Jahn's "long experience in natural resource matters, his reputation for integrity, his frankness, and ... his independence from the Forest Service" would result in an "objective" report.

Audubon lodged an administrative appeal of this decision on May 3, 1994, and eight weeks later, it filed suit in district court, challenging both the denial of its requests and the Forest Service's failure to act on its administrative appeal within twenty working days as required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(ii). On October 21, the Forest Service finally responded to Audubon's administrative appeal by releasing, *inter alia,* redacted copies of both the Jahn report and the Regional Forester's letter.

After conducting an *in camera* review of the unredacted documents, the district court granted summary judgment in favor of the Forest Service. In a two-page order, it concluded that the Jahn report and the Regional Forester's letter both fell within the scope of exemption 5 because they involved "policy making decisions of the Forest Service" and the "deliberative process" of Thomas himself.

### DISCUSSION

■ In the companion case of *Maricopa Audubon Society v. United States Forest Service,* we summarized the general principles of law applicable to FOIA cases. We will not repeat them here except to elaborate on the government's burden of proof. As we previously observed, FOIA imposes on agencies the burden of establishing that information is exempt from disclosure. 5 U.S.C. § 552(a)(4)(B). Courts must apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, "is at a distinct disadvantage in attempting to controvert the agency's claims." *Ollestad v. Kelley,* 573 F.2d 1109, 1110 (9th Cir.1978). To meet its burden, the agency must offer oral testimony or affidavits that are "detailed enough for the district court to

make a *de novo* assessment of the government's claim of exemption." *Doyle v. FBI,* 722 F.2d 554, 555–56 (9th Cir.1983). Only if affidavits and oral testimony cannot provide a sufficient basis for a decision will we rely on *in camera* review of the materials in question. *Pollard v. FBI,* 705 F.2d 1151, 1154 (9th Cir.1983); *see also* infra note 2. If the agency relies on affidavits, they must contain "reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Lewis v. IRS,* 823 F.2d 375, 378 (9th Cir.1987).[1] Whether this burden has been met is a question of law that we review *de novo. See Hardy v. Bureau of Alcohol, Tobacco & Firearms,* 631 F.2d 653, 657–58 (9th Cir.1980).

■ The case before us involves exemption 5 of FOIA, which applies by its terms to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption is "cast in terms of discovery law," *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir. 1980), and entitles an agency to withhold from the public "documents which a private party could not discover in litigation with the agency." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 148, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). Exemption 5 thus covers the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege on which the Forest Service relies here. *Coastal States,* 617 F.2d at 862. The purpose of the deliberative process privilege "is to prevent injury to the quality of agency decisions" by ensuring that the "frank discussion of legal or policy matters" in writing, within the agency, is not inhibited by public disclosure. *Sears, Roebuck,* 421 U.S. at 150–51, 95 S.Ct. at 1516–17 (quoting S.Rep. No. 89–813, at 9 (1965)); *see also Assembly of the State of*

---

1. Where necessary to facilitate the adversarial testing of a claim of exemption, the agency must also compile a so-called *"Vaughn* index" that identifies each document withheld and the statutory exemption claimed for each document, and sets forth "a particularized explanation of how disclosure of the particular document would

damage the interest protected by the claimed exemption." *Wiener v. FBI,* 943 F.2d 972, 977 (9th Cir.1991) (citing *Vaughn v. Rosen,* 484 F.2d 820, 823–25 (D.C.Cir.1973)), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992).

*Cal.*, 968 F.2d at 920; *National Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir.1988).

 To fall within the "deliberative process" privilege of exemption 5, the materials in question must be "predecisional" in nature *and* must also form part of the agency's "deliberative process." *Sears, Roebuck*, 421 U.S. at 151–52, 95 S.Ct. at 1516–17; *Assembly of the State of Cal.*, 968 F.2d at 920. We have adopted the D.C. Circuit's definition of these terms:

> A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." A predecisional document is part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

*Assembly of the State of Cal.*, 968 F.2d at 920 (quoting *Formaldehyde Inst. v. Department of Health & Human Servs.*, 889 F.2d 1118, 1122 (D.C.Cir.1989)) (internal citations omitted). In light of "the strong policy of the FOIA that the public is entitled to know what its government is doing and why," exemption 5 is to be applied "as narrowly as consistent with efficient Government operation." *Coastal States*, 617 F.2d at 868 (quoting S.Rep. No. 89–913, at 9 (1965)).

As we note in the companion case, 108 F.3d at 1082 it is unclear whether we review *de novo* or for clear error the district court's decision that exemption 5 of FOIA applies in this case. Again, however, we need not resolve this issue because even under the more exacting *de novo* review, we conclude that the district court properly applied exemption 5, and we therefore affirm.

### I. The Government's Alleged Failure To Carry Its Burden of Proof

 Audubon argues that the Forest Service has failed to carry its statutory burden of proof that the redacted materials fall within the scope of exemption 5. The Forest Service does not counter this argument directly but emphasizes that the district court engaged in its own *in camera* review of the redacted materials and therefore had an adequate factual basis on which to conclude that they were exempt. Although an agency may not satisfy its burden of proof simply by producing the withheld materials for *in camera* review,[2] we conclude that the Forest Service has met its burden through the introduction of the materials that were adduced in open court. Indeed, we doubt that the agency could have introduced further proof without revealing the actual contents of the withheld materials.

The Thomas declaration clearly explains the purpose and nature of Dr. Jahn's report. The record indicates that the Forest Service furnished appellants with not only the redacted documents, but also a copy of the allegations in response to which both the report and letter were prepared. Even in

---

**2.** Although FOIA authorizes a district court to inspect withheld materials *in camera* in order to determine first-hand whether they are exempt, *see* 5 U.S.C. § 552(a)(4)(B), we have been clear that "the district court's inspection prerogative is not a substitute for the government's burden of proof." *Church of Scientology*, 611 F.2d at 743; *see also Lewis*, 823 F.2d at 378. Neither trial nor appellate courts "can reasonably be expected to wade through a mass of exhibits *in camera*" on account of the government's failure to carry its mandated burden. *Church of Scientology*, 611 F.2d at 742. Moreover, reliance on *in camera* inspection precludes the adversarial testing on which judicial decisionmaking relies: "because the issue is whether one party will disclose documents to the other, only the party opposing disclosure will have access to all the facts." *Wiener v. FBI*, 943 F.2d at 977. Thus, *in camera* review is appropriate only if "the preferred alternative to *in camera* review—government testimony and detailed affidavits—has first failed to provide a sufficient basis for a decision." *Pollard v. FBI*, 705 F.2d 1151, 1154 (9th Cir.1983); *see also NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978) ("[I]n camera review ... is designed to be invoked when the issue before the District Court could not be otherwise resolved."); *Wiener*, 943 F.2d at 979. The agency must, therefore, submit whatever evidence and affidavits it can properly furnish for examination under the court's ordinary procedures before asking for *in camera* review of the material it seeks to withhold.

redacted form, the report and letter detail the substance and background of each allegation, and in many instances, the subjective conclusions of the authors remain discernible. Because the nature and subject matter of the withheld materials were entirely clear to appellants as well as to the district court, we turn to the merits.[3]

## II. The "Deliberative Process" Privilege

■■■■ The first step in resolving a claim of "deliberative process" privilege under exemption 5 is to determine whether the withheld materials are "predecisional." We conclude that the redacted portions of the Jahn report and Regional Forester's letter satisfy this requirement, although not for the reason offered by the government. The Forest Service argues that because agencies are involved in a continual process of self-examination, it need not identify a specific decision in which the Jahn report and the Regional Forester's letter will culminate in order for those materials to be "predecisional." For this position, it relies entirely on a footnote in the Supreme Court's decision in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), which reads:

> Our emphasis on the need to protect pre*decisional* documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*Id.* at 151 n. 18, 95 S.Ct. at 1518 n. 18 (emphasis in original). This cautionary dictum, however, does not justify the broad reading of exemption 5 urged by the government. As we have observed before, the government's argument "proves far too much": "Any memorandum always will be 'predeci-

sional' if referenced to a decision that possibly may be made at some undisclosed time in the future." *Assembly of the State of Cal.*, 968 F.2d at 921. "Characterizing ... documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word." *Id.* (quoting *Coastal States*, 617 F.2d at 868). Thus, we are required to reject the government's primary argument that a continuing process of agency self-examination is enough to render a document "predecisional" and hold, instead, that the agency must identify a specific decision to which the document is predecisional.

In this case, however, the Regional Forester's letter and the Jahn report were not merely part of a routine and ongoing process of agency self-evaluation. Both documents were prepared for the purpose of advising Thomas as to how to respond to specific allegations of unethical and even illegal conduct. The documents were "predecisional" because Thomas relied on them in deciding what action, if any, he was obligated to take in response to the particular allegations. The facts that the Regional Forester took early retirement and that his deputy left his position to work in a different region obscure the actual decision that Thomas reached: these developments may have been the result of action on his part, may have obviated action on his part, or may represent some combination of the two. Our inability to identify the actual decision that was made does not alter the fact that the withheld materials were "prepared in order to assist an agency decisionmaker in arriving at his decision." *Assembly of the State of Cal.*, 968 F.2d at 920 (quoting *Formaldehyde Inst.*, 889 F.2d at 1122).

■■ We turn then to the second step of the "deliberative process" privilege, which requires us to determine whether the materials are "deliberative" in nature. To do so, we focus on "the effect of the materials' release"—namely, whether disclosure of the

---

**3.** This is also not a case in which a *Vaughn* index was necessary. Neither the volume nor the nature of the information at issue suggests that a *Vaughn* index would have been useful either to the district court or to appellants: the Jahn re-

port and Regional Forester's letter total only thirty-four pages, of which only a fraction was at issue, and all of the material is readily comprehensible to a layman.

materials "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly of the State of Cal.,* 968 F.2d at 921 (quoting *Dudman Communications Corp. v. Department of the Air Force,* 815 F.2d 1565, 1568 (D.C.Cir.1987)). The redacted portions of the Jahn report and Regional Forester's letter satisfy this requirement. The withheld materials consisted of "recommendations" and "suggestions," from an inferior to a superior, that reflected "personal opinions of the writer rather than the policy of the agency." *Coastal States,* 617 F.2d at 866. Candor was at a premium in these communications: indeed, Thomas has explained that he sought out Dr. Jahn specifically for his "frankness" and "independence" in the hope of obtaining an "objective" opinion. For his part, the Regional Forester was fighting to preserve his job and reputation and had the right, at this stage of the process, to offer candid and confidential responses and information to the head of his agency in order to rebut the charges made against him. These circumstances, when combined with an examination of the materials that were made available to Audubon, are sufficient to establish that disclosure of the redacted opinions expressed by Jahn and the Regional Forester would be "likely in the future to stifle honest and frank communication within the agency." *Id.*

## CONCLUSION

The Forest Service has established that the redacted portions of the Jahn report and Regional Forester's letter are both predecisional and deliberative in nature. It is therefore entitled to withhold those materials under the "deliberative process" privilege of exemption 5. The judgment of the district court is

AFFIRMED.

RYMER, Circuit Judge, concurring:

I write separately because I cannot agree with the majority's suggestion in Part II that subjective, recommendatory, deliberative work-product is not exempt under Exemption 5 if the work-product is generated in a process of routine agency self-evaluation. As that issue is not presented here—the Jahn report was commissioned to help Director Thomas respond to specific allegations of mismanagement in the Southwestern Region, not to assist Director Thomas in a routine review of Forest Service Policy—the discussion is at best "cautionary dictum," *see* Majority Op. at 2589, that should not bind a subsequent court which squarely faces the issue.