108 F.3d 1082
 44 ERC 1341, 27 Envtl. L. Rep. 20,842,
97 Cal. Daily Op. Serv. 1733,
97 Daily Journal D.A.R. 3248
 MARICOPA AUDUBON SOCIETY, a non-profit Arizona corporation,
and Dr. Robin Silver, Plaintiffs-Appellants,
v.
UNITED STATES FOREST SERVICE and Jack Ward Thomas, Chief,
United States Forest Service, Defendants-Appellees.
 No. 95-16919.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 10, 1996.
Submission Vacated Dec. 24, 1996.
Resubmitted Feb. 12, 1997.
Decided March 7, 1997.
 
 Matthew Kenna, Kenna & Associates, Durango, Colorado, for plaintiffs-appellants.
 John P. Schnitker, United States Department of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona, Stephen M. McNamee, District Judge, Presiding. D.C. No. CV-94-01129-SMM.
 Before: BOOCHEVER, REINHARDT and RYMER, Circuit Judges.
 REINHARDT, Circuit Judge.
 
 
 1
 The Maricopa Audubon Society and one of its members, Dr. Robin Silver (collectively referred to as "Audubon"), appeal the denial of a request they filed pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The request sought material that identifies the nest sites of northern goshawks on national forest land. The United States Forest Service denied the request on the ground that the information fell within exemption 2 of FOIA, which exempts from disclosure matters that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The district court agreed and ruled, in the alternative, that it would exercise its equitable discretion to deny the request. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.
 
 BACKGROUND
 
 2
 Dr. Robin Silver, on behalf of the Maricopa Audubon Society, wrote to the Regional Forester for the Southwestern Region of the Forest Service, requesting the release of certain documents pursuant to the Freedom of Information Act. The letter requested, inter alia, a copy of "the transcript and/or the manuscript" of a public presentation by Forest Service researchers to the annual meeting of the Raptor Research Foundation in 1993. The Regional Forester responded that the manuscript was exempt from disclosure under exemption 5 of FOIA[1] because it formed part of the Forest Service's deliberative process in preparing a scientific document for publication. Audubon appealed this decision to appellee Jack Ward Thomas, Chief of the Forest Service, and when the Forest Service failed to respond within twenty working days as required by FOIA, see 5 U.S.C. § 552(a)(6)(A)(ii), filed suit in district court challenging the agency's failure either to release the manuscript or to respond within the specified time.
 
 
 3
 The Forest Service eventually responded to Audubon's administrative appeal by releasing the manuscript, entitled "Goshawk Reproduction and Forest Management in Northern Arizona," after redacting two sets of information, one of which Audubon now contests. The Forest Service refused to disclose the locations of northern goshawk nest sites on the ground that such information fell within exemption 2 of FOIA, 5 U.S.C. § 552(b)(2).[2] Exemption 2 exempts from disclosure matters that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).[3]
 
 
 4
 Following oral argument on the parties' cross-motions for summary judgment, the district court granted summary judgment for the Forest Service. It first ruled that it would exercise its "equitable discretion" to deny disclosure of the nest site locations. The district court expressed concern that if it were to require disclosure to Audubon, the Forest Service would be bound to disclose the same information to others who might harm the goshawks. It rejected the argument that it could prevent such harm by requiring Audubon to enter into a confidentiality agreement as a condition of disclosure. The district court then ruled "in the alternative" that goshawk nest site information fell within exemption 2. It found that goshawk nest site information "is used to carry out the mandates of the forest service" and was therefore related to the agency's "internal policies and procedures" for law enforcement. It reasoned further that disclosure of goshawk nest sites would place "a greater burden" on the Forest Service to protect the goshawks, particularly in light of the threat posed by Arizona's "burgeoning population" and concomitantly "overtaxed" natural resources. The district court expressed considerable doubt as to the correctness of its rulings, however, and expressed its hope that the relevant law would be "fleshed out" on appeal.
 
 DISCUSSION
 
 5
 The Freedom of Information Act, 5 U.S.C. § 552, "mandates a policy of broad disclosure of government documents." Church of Scientology v. Department of the Army, 611 F.2d 738, 741 (9th Cir.1980). When a request is made, an agency may withhold a document, or portions thereof, only if the material at issue falls within one of the nine statutory exemptions found in § 552(b). See Kamman v. IRS, 56 F.3d 46, 48 (9th Cir.1995); Church of Scientology, 611 F.2d at 742. These exemptions are "explicitly exclusive," Department of Justice v. Tax Analysts, 492 U.S. 136, 151, 109 S.Ct. 2841, 2851, 106 L.Ed.2d 112 (1989) (quoting FAA Administrator v. Robertson, 422 U.S. 255, 262, 95 S.Ct. 2140, 2146, 45 L.Ed.2d 164 (1975)), and "must be narrowly construed" in light of FOIA's "dominant objective" of "disclosure, not secrecy." Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); see also, e.g., Kamman, 56 F.3d at 48; Church of Scientology, 611 F.2d at 742. FOIA imposes on agencies the burden of proving that withheld materials are exempt from disclosure. 5 U.S.C. § 552(a)(4)(B).
 
 
 6
 Our standard of review in FOIA cases is unclear. Recent cases in this circuit have applied different standards: some have reviewed the summary judgment de novo, Schiffer v. FBI, 78 F.3d 1405, 1409 (9th Cir.1996); Minier v. CIA, 88 F.3d 796, 800 (9th Cir.1996), while others have decided only whether the district court's ruling was clearly erroneous. See, e.g., Frazee v. United States Forest Serv., 97 F.3d 367 (9th Cir.1996). We need not resolve this issue here, because under either standard of review we conclude that the district court erred and we therefore reverse.
 
 
 7
 I. Exemption 2 and "Law Enforcement Materials"
 
 
 8
 We conclude that the government has failed to demonstrate how the nest sites of northern goshawks relate "solely," or even predominantly, "to the internal personnel rules and practices of an agency" as required by the provisions of exemption 2. The Forest Service argues initially that the creation of nest-site location information "relates to" an agency "practice" because (1) the creation of such information itself constitutes a "practice," and (2) the "practice" of creating the information "also 'casts light' on other 'practices' of the Forest Service, including the inventorying of goshawk populations and use of that information in management of [Forest Service] lands." Brief for Appellees at 24-25. The Forest Service's analysis in itself provides a fairly compelling demonstration that the relationship of northern goshawk nest sites to the "internal personnel rules and practices" of the Forest Service is, at best, remote. Under the approach taken by the Service, almost all information collected or created by the government would be exempt from disclosure. The government's position in the case before us justifies the concerns expressed by Judge Leventhal of the D.C. Circuit over twenty years ago:
 
 
 9
 In some attenuated sense, virtually everything that goes on in the Federal Government, and much that goes on outside of it, could be said to be "related" through some chain of circumstances to the "internal personnel rules and practices of an agency." The potentially all-encompassing sweep of a broad exemption of this type undercuts the vitality of any such approach.
 
 
 10
 Vaughn v. Rosen, 523 F.2d 1136, 1150 (D.C.Cir.1975) (Leventhal, J., concurring). We categorically reject the government's approach.
 
 
 11
 Our task is made even simpler by the fact that the Tenth Circuit has already rejected the identical arguments in a case involving the same questions and the same parties, although the bird at issue before the Tenth Circuit was the Mexican spotted owl rather than the northern goshawk. In Audubon Society v. United States Forest Service, 104 F.3d 1201 (10th Cir.1997), the Tenth Circuit held that even under the broadest available interpretation, the statutory language of exemption 2 simply does not encompass maps that identify the locations of birds. See id. at 1203-05. Observing that "virtually all written material that the Forest Service publishes would at least to some extent assist its employees in their work," the District Court for the District of New Mexico had rejected the argument that the maps "relate predominantly" to the Forest Service's "internal personnel rules and practices" simply because "personnel use the maps in fulfilling their responsibilities of protecting the owl." Maricopa Audubon Society v. United States Forest Serv., 923 F.Supp. 1436, 1440-41 (D.N.M.1995) (citing Schwaner, 898 F.2d at 796). The Tenth Circuit agreed and emphasized that in order to fall within the terms of exemption 2, materials must relate not simply to "agency practices," but to "personnel practices" in particular. Audubon Society, 104 F.3d 1201, 1203 (emphasis in original). The court relied not only on the text of the exemption, but also on the fact that Congress had enacted exemption 2 for the very purpose of narrowing an earlier "internal management exemption" that had allowed the withholding of "any matter relating solely to the internal management of an agency." Id. (quoting 5 U.S.C. § 1002 (1964)); see also Department of the Air Force v. Rose, 425 U.S. 352, 362-70, 96 S.Ct. 1592, 1599-1603, 48 L.Ed.2d 11 (1976) (discussing 5 U.S.C. § 1002 and the legislative history of exemption 2). The Tenth Circuit also echoed the concern expressed by Judge Leventhal that the "potentially all-encompassing" approach taken by the agency would permit the withholding of "virtually everything that goes on in the Federal Government." Audubon Society, 104 F.3d 1201, 1204 (quoting Vaughn v. Rosen, 523 F.2d at 1150 (Leventhal, J., concurring)).
 
 
 12
 The Tenth Circuit is not alone in rejecting the sweeping interpretation of exemption 2 urged by the government in this and other cases. In Schwaner v. Department of the Air Force, 898 F.2d 793 (D.C.Cir.1990), the D.C. Circuit rejected the argument that a roster containing the names and military duty addresses of low-ranking Air Force personnel fell within the language of exemption 2. The government argued in that case that the personnel data at issue was "exclusively derived from, and thus ... 'related solely to,' the Air Force's 'practice' of extracting selected personnel data" for compilation in a computerized database. Id. at 795. The court aptly observed that such an interpretation of exemption 2 would enable an agency to withhold practically all of the information that it ever gathers:
 
 
 13
 The argument itself makes clear that the only 'practice' to which the material is related is the practice of collecting the data. As bureaucracy is nothing if not a creature of habit, the sweep of the claim is broad indeed, excluding only ... information collected on an official frolic.
 
 
 14
 Id. at 795-96. The D.C. Circuit proceeded to observe that information cannot fall within the language of exemption 2 unless it sheds at least "significant light" on a personnel rule or practice. Id. at 797.
 
 
 15
 We are persuaded by the reasoning of the other circuits, and by the plain language of exemption 2, that information identifying the nest sites of northern goshawks bears no meaningful relationship to the "internal personnel rules and practices" of the Forest Service. To find goshawk nest-site information " 'related' through some chain of circumstances to the 'internal personnel rules and practices of an agency' " would indeed render exemption 2 "potentially all-encompassing," Audubon Society, 104 F.3d 1201, 1204 (quoting Vaughn v. Rosen, 523 F.2d at 1150 (Leventhal, J., concurring)). Moreover, it would stretch the language of exemption 2 in such a manner as to flout the unmistakable intent of Congress that FOIA's exemptions are to be narrowly construed. See, e.g., Tax Analysts, 492 U.S. at 150-51, 109 S.Ct. at 2850-52; Department of the Air Force v. Rose, 425 U.S. at 361, 96 S.Ct. at 1599.
 
 
 16
 Finally, the Forest Service attempts to bring the goshawk nest-site information within the provisions of exemption 2 by citing our court's holding that "law enforcement materials, the disclosure of which may risk circumvention of agency regulation," are covered by that exemption. Hardy, 631 F.2d at 656; Dirksen v. Department of Health & Human Servs., 803 F.2d 1456, 1458 (9th Cir.1986). In Hardy, we held that exemption 2 covered a training manual for federal agents on how to conduct raids and searches, Hardy, 631 F.2d at 657, and in Dirksen, we applied exemption 2 to Medicare claims-processing guidelines that could have been used by health care providers to avoid audits. Dirksen, 803 F.2d at 1458-59. In Hardy, we said that "[m]aterials instructing law enforcement agents on how to investigate violations concern internal personnel practices," Hardy, 631 F.2d at 656, while in Dirksen, we expressed our concern that disclosure of the guidelines could "hinder investigations" and "enable violators to avoid detection." Dirksen, 803 F.2d at 1458 (quoting Caplan v. Bureau of Alcohol, Tobacco & Firearms, 587 F.2d 544, 545 (2d Cir.1978)). Nothing in our prior decisions, and certainly no common-sense definition of the term, suggests that goshawk nest-site information can be deemed "law enforcement material." The requested information does not tell the Forest Service how to catch lawbreakers; nor does it tell lawbreakers how to avoid the Forest Service's enforcement efforts. In sum, we hold that goshawk nest-site information does not constitute "law enforcement material," or any other kind of material that may be withheld under exemption 2.
 
 II. Equitable Discretion Under FOIA
 
 17
 Both sides acknowledge on appeal that the district court lacked authority to deny a FOIA request on the first ground on which it relied--equitable discretion. We agree. We reserved this question in Hardy, 631 F.2d at 655 & n. 1, but the answer is clear. FOIA itself states that it "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated." 5 U.S.C. § 552(d). In enacting FOIA, Congress "created a scheme of categorical exclusion; it did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis." FBI v. Abramson, 456 U.S. 615, 631, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982). We have held, in the converse of the present case, that a district court lacks "inherent authority" to require disclosure of materials that are exempt under FOIA. Spurlock v. FBI, 69 F.3d 1010, 1016 (9th Cir.1995). In doing so, we flatly rejected the argument that the broad discretion of the federal courts to fashion remedies enabled the district court to require the disclosure of exempt materials: "Congress provided a comprehensive scheme under FOIA specifying when governmental disclosure is required. The Supreme Court has held this scheme to be 'explicitly exclusive.' " Id. at 1017 (quoting Tax Analysts, 492 U.S. at 151, 109 S.Ct. at 2851-52) (citations omitted).
 
 
 18
 The notion that a district court may exempt materials that do not fall within one of FOIA's nine enumerated exemptions runs contrary not only to the fact that the exemptions are "explicitly exclusive," Tax Analysts, 492 U.S. at 151, 109 S.Ct. at 2851 (quoting FAA Administrator v. Robertson, 422 U.S. at 262, 95 S.Ct. at 2146), but also to the unmistakable intent of Congress: "Congress sought to insulate its product from judicial tampering and to preserve the emphasis on disclosure by admonishing that the 'availability of records to the public' is not limited, 'except as specifically stated.' " Id. (quoting Abramson, 456 U.S. at 642, 102 S.Ct. at 2070 (O'Connor, J., dissenting)) (emphasis in Abramson ). Moreover, as the government itself points out, the notion that courts may exercise equitable discretion in FOIA cases "runs entirely contrary to Congress' 'intent to provide 'workable' rules of FOIA disclosure.' " Reporters Committee, 489 U.S. at 779, 109 S.Ct. at 1485 (quoting FTC v. Grolier, Inc., 462 U.S. 19, 27-28, 103 S.Ct. 2209, 2214-15, 76 L.Ed.2d 387 (1983)). As the Court has noted, Congress has "repeated[ly] reject[ed] any interpretation of the FOIA which would allow an agency to withhold information on the basis of some vague 'public interest' standard." Federal Open Market Comm. v. Merrill, 443 U.S. 340, 354, 99 S.Ct. 2800, 2809, 61 L.Ed.2d 587 (1979). We conclude that a district court lacks inherent power, equitable or otherwise, to exempt materials that FOIA itself does not exempt. To put it simply, "FOIA provides a right to disclosure if the information is not exempt." Spurlock, 69 F.3d at 1017.[4]
 
 
 19
 III. Disclosure Under a Confidentiality Agreement
 
 
 20
 In the district court and on appeal, Audubon offered to execute a confidentiality agreement under which it would bind itself not to disclose the nest-site information to other parties. The government argues, and the district court ruled, that FOIA does not permit selective disclosure of information only to certain parties, and that once the information is disclosed to Audubon, it must also be made available to all members of the public who request it. We agree.[5] Thus, we do not consider appellants' offer in reaching our decision.
 
 CONCLUSION
 
 21
 Goshawk nest-site information cannot be characterized as "law enforcement material" and does not otherwise fall within the language of exemption 2. Moreover, FOIA precludes courts from denying valid requests for information on equitable grounds. The judgment of the district court is reversed with directions to enter summary judgment in favor of appellants.
 
 
 22
 REVERSED.
 
 
 
 [1]
 Exemption 5, which is no longer at issue in this case, exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents "normally privileged in the civil discovery context." Assembly of the State of Cal. v. Department of Commerce, 968 F.2d 916, 920 (9th Cir.1992) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S.Ct. 1504, 1515-16, 44 L.Ed.2d 29 (1975)). Exemption 5 thus incorporates the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege that protects candid internal discussion of legal or policy matters. Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 862 (D.C.Cir.1980)
 
 
 [2]
 The Forest Service abandoned its earlier position that this information was exempt under exemption 5
 
 
 [3]
 The other set of information consisted of "interpretive data pertaining to goshawks" and fell within exemption 5. Audubon no longer seeks that information
 
 
 [4]
 Nor can our decision in General Services Administration v. Benson, 415 F.2d 878, 880 (9th Cir.1969), be read as indicating that a district court has general equitable discretion to deny a valid request under FOIA. In Benson, we rejected a claim that certain records involving a purchase of property from the General Services Administration were privileged from discovery under Federal Rule of Civil Procedure 26(b). See id. at 879-80. We reasoned that the claim of privilege was governed by exemption 5 of FOIA, which in part protects documents that are not discoverable. In doing so, however, we implied in passing that FOIA itself confers "equity jurisdiction" on courts: "In exercising the equity jurisdiction conferred by the Freedom of Information Act, the court must weigh the effects of disclosure and nondisclosure, according to traditional equity principles, and determine the best course to follow in the given circumstances." Benson, 415 F.2d at 880. We then repeated this language in Theriault v. United States, 503 F.2d 390 (1974), in which we held that the district court had erred in directing the production of government documents under Federal Rule of Civil Procedure 34 without first determining whether the materials were exempt from disclosure under FOIA. See id. at 392. In remanding to the district court for the necessary findings under FOIA, we offered "as a guideline" the above language from Benson. Id
 Benson and Theriault both involved requests covered by exemption 5. The two cases merely recognized that where documents normally privileged in the civil discovery context are involved, courts may employ in exemption 5 cases the same equitable principles that they may use to fix the scope of discovery in civil litigation against an agency. Except in this limited sense, however, courts do not possess "equitable discretion" to deny FOIA requests.
 
 
 [5]
 FOIA itself states that records, if not exempt, must be made "promptly available to any person," 5 U.S.C. § 552(a)(3), and the Supreme Court has repeatedly recognized that FOIA is "clearly intended ... to give any member of the public as much right to disclosure as one with a special interest" in a particular document. Department of Defense v. Federal Labor Rel'ns Auth., 510 U.S. 487, 495-97, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994) (quoting Department of Justice v. Reporters Committee for Freedom of Press, 489 U.S. 749, 771, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975))) (internal quotation marks omitted). Thus, "except in certain cases involving claims of privilege, 'the identity of the requesting party has no bearing on the merits of his or her FOIA request.' " Id. (quoting Reporters Committee, 489 U.S. at 771, 109 S.Ct. at 1480-81). "Once records are released, nothing in FOIA prevents the requester from disclosing the information to anyone else. The statute contains no provisions requiring confidentiality agreements or similar conditions." Swan v. SEC, 96 F.3d 498, 500 (D.C.Cir.1996). We note once again that FOIA is "a scheme of categorical exclusion" that does not permit "a judicial weighing of the benefits and evils of disclosure on a case-by-case basis." FBI v. Abramson, 456 U.S. 615, 631, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982)
 Nor does appellants' purportedly heightened interest in the welfare of goshawks justify any special treatment of their request for information. A party's rights under FOIA "are neither increased nor decreased by reason of the fact that it claims an interest ... greater than that shared by the average member of the public": "The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 1513 n. 10, 44 L.Ed.2d 29 (1975). The Court has explained that "[e]xcept for cases in which the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request." Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 771, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989) (discussing Department of Justice v. Julian, 486 U.S. 1, 11-12, 108 S.Ct. 1606, 1612-13, 100 L.Ed.2d 1 (1988)); see also United Technologies Corp. v. FAA, 102 F.3d 688, 691-92 (2d Cir.1996); Swan, 96 F.3d at 499-500. Here, the Forest Service has not purported to withhold the information because it fears invasion of the goshawks' privacy within the meaning of some exemption other than exemption 2; rather, it has claimed that the information is exempt from disclosure because it is "related solely to ... internal personnel rules and practices" within the meaning of exemption 2. We do not see how the goshawks have a "claim of privilege" in this case, assuming that is even possible; nor do we see how appellants can claim to be "the party protected by the privilege."